ELLINGTON, next friend, *v.* BEAVER DAM LUMBER CO.

1. Under the constitution of this State, the superior courts have no authority to grant charters to railroad companies. A company to which a charter was granted by the superior court for the purpose of "carrying on the general business of sawing all kinds of lumber, by machinery run by steam, or such power as may be best adapted to the business; to place said lumber on market," etc., is not a railroad company, although, according to its charter, it had authority "to buy, lease, sell, use and operate locomotives and railroad engines on tramroads and railroads; to build, construct and project railroads and tramroads contiguous to, and in connection with, and for the purpose of furthering, facilitating and more readily and easily carrying on the aforesaid business of sawing, manufacturing, etc., as proposed." The fact that such company did, on some occasions, transport passengers and freight for hire, did not make it a railroad company as to one of its own employees who was injured by the movement of a locomotive at a time, and upon an occasion, when the company was in no sense engaged in transacting business as a carrier for the public.

2. The manager of a vehicle used locally by a lumber company in the transportation of its supplies and products, and another servant of the company whose business it is to repair and keep in proper condition the track upon which the vehicle is run, and who, according to the custom of the company, is daily transported to and from his work on this vehicle, are fellow-servants, both being in the employment of the company, and the work of both, when regularly carried on, conducing to the accomplishment of a common object, to wit, the transportation of the company's supplies and products.

3. The laws of this State applicable to actions by employees against railroad companies, as such, are not applicable to an action against a lumber company of the kind above indicated, by one of its employees; but the general law applicable to an action for personal injuries by a servant against his master must control. This being so, and it appearing from the evidence that the plaintiff and the fireman, through whose alleged negligence the plaintiff was injured, were fellow-servants, the plaintiff was not entitled to recover, even if the negligence was established, and was the cause of the injury. Consequently, there was no error in granting a nonsuit.

November 27, 1893.

Action for damages. Before Judge McWHORTER. Burke superior court. May term, 1893.

BOYKIN WRIGHT and BERRIEN & MUNNERLYN, for plaintiff.   J. R. LAMAR, H. H. PERRY and JOHNSTON & BRINSON, for defendant.

LUMPKIN, Justice.

1. The superior courts have no power, under the constitution of this State, to grant charters to railroad companies.  If, notwithstanding, a superior court should go through the form of incorporating a railroad company, and the alleged company transacted business as a common carrier in transporting freight and passengers, it may be that the persons composing it would be estopped from denying that it was a railroad company, and as such subject to the laws of this State with respect to the liability of railroad companies.   It is quite obvious, however, that the superior court of Burke county, in granting a charter to the Beaver Dam Lumber Company, made no attempt whatever to incorporate it as a railroad company.   The terms of the charter, as they appear in the record, show plainly enough that this company was incorporated to carry on the business of sawing and selling lumber of all kinds; and although it may have had authority to buy and operate engines on tramroads, and to build such roads, these powers were to be exercised only in connection with, and for the purpose of facilitating and more readily carrying on, the lumber business itself; that is, they were merely incidental to the main object and purpose for which the company was created, and nowhere in the charter is any power granted to conduct a transportation business for the public, as would necessarily be done in the charter of a railroad company.   The Beaver Dam Lumber Company was, therefore, not a railroad company; and so far, at least, as its own employees are concerned, this fact is not altered because, on some occasions, the company did transport passengers and freight for hire. Whatever its liability might be to those it served in this

manner, it certainly was not liable as a railroad company to an employee for an injury occasioned to him by the movement of a locomotive at a time when the company was engaged strictly in the transaction of its legitimate business and in no sense operating as a carrier for the public.

2–3. For the purposes of this case, it is proper, then, to treat the locomotive as a mere ordinary vehicle, and the person in charge of it as its manager, just as if it were a wagon and that person were the driver or manager of the team by which the wagon was drawn. The engineer, strictly speaking, was the servant of the company whose duty it was to manage the locomotive and control its movements, but the fireman's duty required him to be upon it also, and it was there his work was to be performed. He was a sort of assistant to the "driver."

The action was brought by Dennis Ellington, as next friend of his minor son, Joe Ellington. Regularly, Joe should have been the plaintiff, suing by Dennis as his next friend, but the difference is of no consequence. *Lasseter* v. *Simpson*, 78 *Ga.* 61; *Van Pelt* v. *C. R. & C. R. R. Co.*, 89 *Ga.* 706. For convenience, however, it will be understood that when the word "plaintiff" is hereinafter used, reference to Joe Ellington is intended. It was his business, in connection with others, to work upon and keep in order the track of the company's railroad over which it transported its own products and supplies, and the evidence shows that it was the custom of the company to daily transport its track-hands, including the plaintiff, upon the locomotive, to and from their work. The substance of the plaintiff's main contention is, that while he was in the act of getting upon the locomotive to be carried home at the close of a day's work, the fireman, by suddenly starting the locomotive, caused the injuries received by the plaintiff, who was free from fault, and that this conduct of the fireman

was negligent. Before proceeding to discuss the question of the company's liability upon the assumption that the above contention was sustained, it will be proper, perhaps, to state and dispose of another contention made on the brief of counsel for plaintiff in error, and insisted upon here, which was : that the negligence complained of, even though committed by the fireman, is imputable to the company itself, because the duty to supply the locomotive with a competent engineer devolved upon the company proper, and that as the fireman was inexperienced and incompetent, putting him in charge of the engine, whether done by the company or its representative, was the negligence of the company itself. We quote from the declaration all that is material upon this point : "That said company was further careless and negligent in that the said train was carelessly and negligently started, as aforesaid, by a person not the engineer of said train, and in the absence of the engineer from the place of his duty, the person so attempting to run said train being inexperienced and incompetent."

It will be observed there is no allegation that the company, either by itself or by any representative, supplied the "inexperienced and incompetent" person to run the engine, or made it his duty to do so. The declaration simply states what he did, but does not state that he had any authority from the company, direct or indirect, for so doing. The plaintiff himself testified it was not the business of the fireman to run the engine, and that there was no reason for the engineer not to have done it, as he was there in the cab of the engine. It is, therefore, apparent that the contention of the plaintiff with which we are now dealing is not sustained either by his pleadings or by his proof.

We now return to the question whether the company is liable or not, granting that the plaintiff was free from fault, and that he was injured by the negligence of the

fireman.   The general rule of law that a master is not liable to a servant for an injury caused by the negligence of a fellow-servant is well settled.   Section 2083 of the code, for the reason therein stated, makes an exception to the rule, so far as railroad companies are concerned, and makes these companies liable, just as they are to passengers, to all " employees who cannot possibly control those who should exercise care and diligence in the running of trains,   .   .   .   for injuries arising from the want of such care and diligence."   The defendant in this case not being a railroad company, this section of the code is not applicable, and, therefore, the only remaining question is, were the plaintiff and the fireman, under the peculiar facts of this case, fellow-servants?

The rule for determining who are fellow-servants is thus stated in Wood's Master & Servant, §435 : " The true test of fellow-service is community in that which is the test of service, which is subjection to control and direction by the same general master in the same common object; but unless they are subject to the same *general control*, the fact that they are engaged in the same common pursuit does not render them co-servants. *It is subjection to the same general control, coupled with an engagement in the common pursuit, that affords the test,* and unless the two elements concur there can be no common service, which disentitles an employee under the control of one master, from recovering for injuries received through the negligence of a servant under the control of another master."   In the notes on pages 855 to 857 of this work, numerous cases are cited affording illustrations as to who may be considered fellow-servants, among them Whaalan *v.* M. R. & Lake Erie R. R. Co., 8 Ohio St. 249 ; Indianapolis R. R. Co. *v.* Love, 10 Ind. 554; Same *v.* Klein, 11 *Ib.* 38, in support of the proposition that where one servant was employed by a railroad company in making repairs to its tracks, and an-

other as fireman on one of its trains, these were not
such distinct departments of duty as to make any ex-
ception to the general rule constituting them fellow-
servants.   On pages 861–2, the author of this text-book
has collected quite a comprehensive list of cases showing
who are to be regarded as fellow servants, including
"conductor and track-layer," "engineer and laborer,"
and so on.   On the latter page, instances to the con-
trary are also given, and authorities cited.   In addition
to the above authorities, the cases of *Prather* v. *R. & D.
R. R. Co.*, 80 *Ga.* 427, and *White* v. *Kennon & Co.*, 83 *Ga.*
343, sustain the proposition that a track-hand who is
carried to and from work upon a train of his master is
a fellow-servant of the engineer and fireman in charge
of that train.   The former case is not precisely in point,
but it certainly bears in the direction indicated.   The
latter case very closely resembles the case at bar.   The
defendants were a firm operating a steam saw-mill, and
in connection with it, used a tramroad extending some
distance into the country, on which engines and truck
cars were run for the purpose of hauling logs to the
mill.   The plaintiff was employed to take charge of a
gang of hands and to keep the track of the tramroad
in repair.   On the occasion upon which he was injured,
he was required to go out on a train with a load of ties
and was riding on the ties, and while on the journey,
the train ran into a bad place in the track, threw him
from the car, and he was injured severely.   In the opinion
delivered by Justice SIMMONS it is stated that : "The law
of this State concerning actions of this sort against rail-
road companies is not applicable to the present case,
but it is controlled by the principles of the general law
between master and servant"; and it was held that the
plaintiff was not entitled to recover, for two reasons :
first, because it was gross negligence on his part to ride
over this defective track on top of a load of cross-ties ;

and second, because he and the engineer, of whose negligence he complained, were fellow-servants, and the defendants were not liable to the plaintiff for the negligence of his co-employees.

According to the evidence in the case at bar, it was in the line of the plaintiff's duty, and in conformity to the custom of the company, for him to be daily transported to and from his work on the locomotive by which he was injured, he being employed in the capacity of track-hand. In our opinion, he and the fireman were fellow-servants, both being in the employment and under the general control of a common master, and the work of both, when regularly carried on, conducing to the accomplishment of the common object for which they were engaged by the company, viz: the transportation of its own supplies and products. According to the test laid down by Mr. Wood and other text-writers, and to the weight of current authority, which is in accord with previous decisions by this court, we think the conclusion that the plaintiff and the fireman were co-employees is inevitable.

In *Shields* v. *Yonge, supt.*, 15 *Ga.* 349, the second count in the declaration alleged that the plaintiff's son, who was killed, was employed on the train as a fireman, by contract with his father. In commenting on this count, Judge BENNING, on page 357, said: " The second count differs from the first in this—that it alleges the said son and servant of the plaintiff to have been received by the superintendent, Wadley, as a *hireling*, to perform certain services about the cars, &c., for which the plaintiff was to be paid. It alleges that the injury, resulting in the death of the son, was brought about by the negligence of Wadley and his servants. Now, Wadley, in hiring the minor son, acted simply as agent for the State. He was the State's superintendent of the State's road. Wadley, and his servants, and this minor son, after his

hiring, were, therefore, *all* fellow-servants of a common principal—the State. And this suit is, in effect, against that principal. Now, the question is, does an action lie against the principal, for an injury done to a servant by a fellow-servant, at a time when both servants are acting in the course of their common employment?" This, however, was carrying the doctrine of fellow-servants farther than this court has since been disposed to do. Indeed, in *Cooper* v. *Mullins*, 30 *Ga.* 146, some of the language used by Judge STEPHENS tends towards the other extreme; but the decision in that case, applied to its facts, does not go as far as the Judge's reasoning would indicate. It appeared that the plaintiff, an engineer, who was not in the regular service of the W. & A. R. R., but an employee of the Georgia railroad, was injured while on a special mission in charge of a locomotive drawing a train of cars over the W. & A. R. R., because of the negligence of an employee on another train used in the regular business of that road. These two persons were, we think, properly held not to be fellow-servants.

In *Krogg* v. *A. & W. Pt. R. R. Co.*, 77 *Ga.* on page 214, Justice BLANDFORD alludes to the " philosophic view" of this question taken by Judge STEPHENS in the *Mullins* case, and cites that case in connection with that of *Bain* v. *Athens Foundry &c. Works*, 75 *Ga.* 718, to sustain the correctness of the proposition that a railroad engineer was not a fellow-servant of the general manager. And again, in *Killian* v. *Augusta & Knoxville R. R. Co.*, 78 *Ga.* on page 751, Justice HALL refers approvingly to the *decision* in the *Mullins* case; but nothing in the cases just mentioned conflicts with what is ruled in the case at bar. In deciding them, it was not necessary for this court to adopt all that was said in the opinion of Judge STEPHENS, nor do we think it was intended to do so.

The case mainly relied on by counsel for plaintiff in error is that of *Atlanta & Richmond Air-Line Ry. Co.* v. *Ayers*, 53 *Ga.* 12, in which it appeared that the plaintiff's deceased husband, who had been in the employment of the railway company as a track-raiser, was killed in attempting to leave a gravel or construction train of the company which had stopped at the point where he and other hands were at work to take them to a depot a few miles distant, the negligence alleged being that the train was suddenly started before the deceased had time to safely disembark at the depot in question. In that case, however, this court did not really decide that the deceased and the employees of the company charged with the duty of running the train were not fellow-servants. The question was left open, as a close examination of Judge Trippe's opinion will show. Moreover, the plaintiff's right to recover did not depend upon a decision of that question, and it was not necessarily in the case. It being a suit against a railroad company, it made no difference whether Ayers, the track-hand, was a fellow-servant of the employees on the train or not, because, under section 2083 of the code, all employees except those who may be able to control those engaged in the running of trains are placed upon the footing of passengers as to injuries arising from the negligence of this latter class of employees, and there can be no doubt that the employees protected by this section include all who fall within the descriptive words, "cannot possibly control those who should exercise care and diligence in the running of trains," whether they may or may not be properly classed as fellow-servants of the train employees. This being so, Ayers, by virtue of this section, was in either event given the rights of a passenger, so far as the liability of the company was concerned, and accordingly it was held that his own negligence, even though contributing to his death, would not totally defeat the right of

his widow to recover. In other words, this section put the class of employees to which Ayers belonged on the same legal footing with passengers, without any reference to the question of fellow-service.

In *Georgia R. R. Co.* v. *Goldwire*, 56 *Ga.* 196, it was held that a railroad employee without fault could recover for injuries occasioned by the negligence of co-employees in the same service. This ruling was based largely upon the law contained in §§3033 and 3036 of the code, but it was also strongly intimated that the plaintiff, a " train-hand," was an employee who could not " possibly control" the conductor and engineer, and that consequently he might recover under §2083. Enough is there suggested to make it certain, if there can be any doubt about it, that a track-hand like Ayers could not possibly control employees running a train. After a careful study of the *Ayers* case, we are satisfied that, properly understood, it contains nothing out of harmony with what is ruled in the case at bar.

If a farmer should use a wagon to send his servants to a field to pick cotton, and to haul the cotton and the cotton-pickers home at night, and one of the latter should be injured because the driver of the wagon, or another servant who assisted him in managing or loading the wagon, negligently and carelessly started the team too suddenly, it would be clear enough that the farmer would not be liable for the injury. We have endeavored to show that the present case falls within the same class as that indicated by the above homely illustration, and if we have succeeded, our conclusion that the plaintiff was not entitled to recover must be correct. In this connection, see the remarks of Lord Abinger, C. B., in the case of Priestly *v.* Fowler, 3 Mees. & W. 1, cited in McKinney on Fellow-Servants, §4.

The granting of the nonsuit was right.

*Judgment affirmed.*