## COLLEY *v.* SOUTHERN COTTON OIL COMPANY,

### and *vice versa.*

1. Employees in the service of and subject to the same general control and direction of a common master, and whose labor conduces to the same general purpose, are fellow-servants, although they may be employed in different departments of duty, and so far removed from each other as that one can in no degree control or influence the conduct of the other. *Davis* v. *Muscogee Mfg. Co.*, 106 *Ga.* 126, *Kerr* v. *Crown Cotton Mills*, 105 *Ga.* 510, *Brush Electric Light Co.* v. *Wells*, 110 *Ga.* 192, followed.

2. It is the duty of a master to furnish his employee with a safe place to work; and where the employee is injured in consequence of a breach of this duty, he may recover, even though the negligence of a fellow-servant may have contributed to the injury.

3. While the allegations of the original petition with reference to the matters referred to in the note just preceding were somewhat vague and indefinite, there was enough in the petition to amend by. The amendment offered was properly allowed, and the petition as amended set forth a cause of action.

Argued April 6, — Decided June 8, 1904.

Action for damages. Before Judge Lewis. Laurens superior court. July 28, 1903.

*Hawkins & Weddington* and *T. W. Hardwick*, for plaintiff.
*Dessau, Harris & Harris*, for defendant.

COBB, J. Colley sued the Southern Cotton Oil Company, alleging in his original petition as follows: Some time prior to October 24, 1901, defendant employed plaintiff to labor in the capacity of carpenter at and about its factory, doing such work as his superiors would order him to do. Defendant had a cotton press in the second story of its building, in which the lint taken from cottonseed was packed into bales. Alvin Gibson was an employee of defendant, and his duty was to prepare and press or pack the cotton. At the time plaintiff was employed, there were two long skids running obliquely from the door of the pressing room to the ground, upon which the bales of cotton were transmitted from the pressing room to the ground. Under these skids there was a passageway from one part of the yard to another, which was used by defendant's employees. There was no other passageway, all the other space in the yard being filled with cottonseed hulls, etc. On or about October 15, 1901, the skids broke and were removed from the yard. The breaking and removing of the skids was known to defendant's superintendent in charge of the plant, and also to its general manager, whose duty it was to have the skids repaired or replaced with new ones. On October 24, 1901, plaintiff was engaged in the performance of his duties, and while passing from one part of the yard to another, in order to secure a certain piece of timber necessary to be used in the work he was then doing, while just under the door of defendant's pressroom, Alvin Gibson, without any warning to the plaintiff whatever, threw out of said pressroom door a bale of cotton, striking plaintiff on the head and shoulders, violently crushing him to the ground. Plaintiff had no knowledge of the fact that the bale of cotton would be thrown from the pressroom door, had no means of knowing that it would be done, and could not have known of it by the exercise of ordinary care. Gibson was ordered by the superintendent to throw the cotton out from the pressroom door. The defendant was negligent in that it failed to repair the broken skids or to replace them with new ones. The defendant was grossly and criminally negligent in knowingly permitting its agent, Gibson, to throw the cotton out of the pressroom door in such a reckless manner. Defendant owed plaintiff the duty of informing him that cotton would be thrown from the door, in order that he might have been on the lookout. The

recklessness and negligence of Gibson in throwing the cotton out of the door shows him to have been an unskilled servant, and this was known to defendant.    The plaintiff was free from fault, and the consequences of defendant's negligence could not have been prevented by the exercise of ordinary care and diligence on his part.    The petition describes the injuries, and prays for damages in the sum of twenty thousand dollars.    By amendments duly allowed the following allegations were made:  Defendant's superintendent, referred to in the original petition, had, at the time of giving the order therein mentioned, full control, direction, and supervision of all the employees of defendant, all of them being subject to his orders.    The superintendent was defendant's vice-principal during the entire month of October.    The superintendent was grossly negligent in giving the order referred to.    Gibson, the employee, was negligent in throwing cotton at all from the pressroom door, and negligent in doing this without warning plaintiff that he was about to do so.    Defendant is responsible for such negligence.    At the time of the accident plaintiff had no notice or knowledge or information that defendant or any of its employees had ever thrown cotton from the pressroom door, and had no reason to consider it dangerous or hazardous to pass by the same.    Plaintiff was employed as a carpenter to do repair work and carpenter work on the various buildings about the plant of defendant, and his work had no connection with the business of defendant, which was manufacturing seed into oil, and had no connection with the business of preparing and packing or pressing cotton after the seed had been taken therefrom.    While plaintiff and Gibson were subject to the control and direction of the same general master, they were not engaged in the accomplishment of the same general object.    The pressroom door was nine feet above the ground.    The other amendment alleged:  At the time the superintendent and vice-principal of defendant gave the order to throw the cotton from the pressroom door he directed Gibson and the other employees in that department to throw the cotton down as fast as the same was ready to be thrown down, and about two bales per day were pressed and packed and thrown down.    The order was that all cotton should be thrown from the pressroom door until the skids were repaired.    The superintendent well knew that in order for this order to be obeyed the cotton

would have to be thrown down during working hours, and while many of the employees of the defendant were constantly and necessarily using the passageway under the pressroom door; that the distance from the door to the ground was nine feet, and the average weight of the bales of cotton thrown down was 500 pounds, the actual weight of the bale which struck plaintiff being 508 pounds. Plaintiff alleges that under these circumstances the giving of the order was gross and wanton carelessness on the part of the superintendent, for which the defendant is responsible. The defendant demurred to the original petition, and also to the petition as amended, and the demurrers were sustained. The plaintiff assigns error upon the judgment sustaining the demurrers, and the defendant, by cross-bill of exceptions, assigns error upon the allowance of the amendments.

It is contended that the original petition set forth a state of facts from which it appeared that the injuries sustained by the plaintiff were the result of the negligence of a fellow-servant; that therefore it set forth no cause of action, and there was nothing to amend by. Counsel for the plaintiff in error candidly concede in their brief, that under the ruling in *Davis* v. *Muscogee Mfg. Co.*, 106 *Ga.* 126, and *Kerr* v. *Crown Cotton Mills*, 105 *Ga.* 510, the plaintiff and Gibson were fellow-servants, and that if these cases are to be followed, the demurrer was properly sustained, unless the original petition can be construed as setting up negligence on the part of the master in failing to furnish the plaintiff a safe place to work, or in failing to keep the same safe after having furnished it. They ask leave to review these cases, and that they be overruled, contending that they are unsound in principle; but after consideration we must decline to overrule the same. Since the decision in *Brush Electric Light Company* v. *Wells*, 110. *Ga.* 192, the principle of the decisions referred to has been steadfastly adhered to, and must now be considered as the settled law of this State. The case of *Bain* v. *Athens Foundry*, 75 *Ga.* 718, relied on by counsel as controlling, was distinguished by Mr. Justice Fish in the *Wells* case, and in addition to this was a decision by only two Justices, and for that reason not controlling. It is to be determined, therefore, whether the original petition, properly construed, sets forth any averments of negligence of the master which would charge the defendant independently of the negligence of

the fellow servant, or which were connected therewith in such a way that the fact that the act of a fellow-servant contributed to the injury would not relieve the master from liability for his neglect. The petition alleged that a passageway was furnished for the plaintiff and the other employees, which at the time it was furnished was perfectly safe; that it had been rendered unsafe by the breaking of the skids, and that the absence of the skids brought about a new use for the passageway, that is, as a place for throwing bales of cotton from the door above; and that this new use was the result of an order from one who was to be considered as representing the master. Construing the petition as a whole, it is to be clearly drawn therefrom that this change in the use of the passageway was made under the direction of the master, without notice to the plaintiff, who was accustomed to use the passageway, and whose safety was imperiled by the new use to which it was placed. While the throwing of the bale into the passageway was the act of a fellow-servant, and one of the risks which the plaintiff would have taken if he had been informed that the passageway was to be put to this use, the new use to which the passageway was put was not the act of a fellow-servant, but the act of the master, and the danger incident to such use was not one of the risks assumed by the plaintiff, until he had been put on notice that that part of the premises was to be used in a different manner from that in which it was used at the time of his employment. See, in this connection, 1 Labatt on Master and Servant, § 28. So construing the petition, it set forth a cause of action, and the amendments were allowable, being simply an amplification of the somewhat general averments of the petition.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concur.*