## GEORGIA COAL & IRON COMPANY v. BRADFORD.

1. Employees of a common master, engaged in labor for the furtherance of the general purpose of the business in which they contract to serve, are fellow-servants within the purview of the Civil Code, § 2610, providing that, "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business."

2. Under this rule, a teamster employed by a coal and iron company to assist in hauling a boiler from the furnace plant of the company to its coal mines, to be there used in getting out coal for consumption in the furnace and locomotives of the company, is a fellow-servant with the engineer and fireman of a locomotive operated in the yards of and in connection with such furnace plant, and therefore not entitled to recover damages from the master for injuries attributable to their negli-gence.

Argued January 14,—Decided August 15, 1908.

Action for damages. Before Judge Fite. Dade superior court. April 29, 1907.

*Tye, Peeples, Bryan & Jordan,* for plaintiff in error.

*Payne & Payne, R. J. & J. McCamy,* and *R. F. McClure,* contra.

HOLDEN, J. L. E. Bradford brought an action against the Georgia Coal and Iron Company, a corporation, for damages alleged to have been sustained by him by reason of the negligence of the defendant's servants and agents; and obtained a verdict. The defendant's motion for a new trial was denied, and that ruling was brought to this court by writ of error. The facts disclosed by the record, necessary to an understanding of the decision here made, are as follows: The defendant company was engaged in the operation of a furnace plant at Rising Fawn, Ga., and desired to move a boiler from its plant there to be used at its coal mines, from ten to fourteen miles distant, in getting out coal for use in its locomotives and furnaces. The plaintiff was hired by the defendant at a stated price per day, to furnish a team of mules and himself to assist other teamsters in hauling this boiler from the plant to the coal mines. He reported at the furnace plant on the morning he was to begin work, hitched his mules, threw his "stretchers" across his shoulders and started with them to the place where the wagon on which the boiler was to be hauled was standing. A railroad track ran through the yards of the furnace plant of the defendant company, passing between the point at which the plaintiff hitched his mules and the place where the wagon was, which track was

used by the defendant company in connection with its furnace plant. As the plaintiff was walking over a crossing leading across this track to the defendant's furnace, carrying the "stretchers" to the wagon, he was struck and thrown from the track by the rear end of an engine used in hauling products from the furnace, which was then backing along the track on its way to a water-tank, sustaining the injuries for which he brought suit. He alleged that he was not guilty of any negligence, but that his injuries were occasioned solely by the negligence of the servants of the defendant who were operating the engine which struck him.

1. It appears from the evidence contained in the record, that the master mechanic of the defendant (who the plaintiff testified was the "company's boss foreman there about the place, giving any orders") made the contract of employment with the plaintiff; and the undisputed evidence, including that of the plaintiff himself, is that he was to furnish his own labor and that of his team of mules at an agreed price per day, and was to be subject to the control and direction of the said foreman in and about the work to do which he was employed. When the plaintiff, pursuant to his contract, reported on the premises of the defendant, and was engaged in carrying a part of the outfit furnished by him to the wagon to be used in hauling the boiler, he had already entered on his employment, and the relationship of servant and master existed between him and the defendant. It remains to be determined whether, with this relation existing, under the peculiar facts of this case he occupied the further relation of fellow-servant with the crew of the engine to whose negligence he attributes the injuries which he received. It is conceded by counsel for the plaintiff, and such is the law, that if the latter relation also existed, notwithstanding his injuries be chargeable to the negligence of such fellow-servants, the master would not be liable to respond to him in damages therefor.

The courts have experienced great difficulty in laying down any fixed rule by which to determine when the relationship of fellow-servant exists. Indeed, it is well nigh impossible to do this, since of what are termed personal relations that of master and servant most frequently receives the attention of the courts, and gives rise to such a flood of cases that no criterion can be established sufficiently accurate to cover the ever shifting facts involved in the

various decisions. The difficulty has been greatly enhanced, and a diversity of opinion created among the various courts, by the application of different theories as to what constitutes the rationale underlying the liability of the master. Some authorities have entertained the view that considerations of public policy give rise to the exemption of the master from responsibility for the negligent acts of a fellow-servant, on the idea that to hold the servants alone responsible to each other tends to promote regard and caution for the welfare of each other, thereby enhancing the general character of the service and the consequent good of all concerned. Others have reasoned that the master should not be held to liability, because the servants, coming into contact with each other, were in a better situation to become acquainted with the habits and methods of their fellow-workmen, to note their exercise of care, or want of it, and were thus better able to guard themselves, than the master was to protect them, against the perils arising from the negligence of each other. These views have originated what is known as the "conassociation or departmental rule," whereby those engaged in separate departments of the work of a common master are not regarded as fellow-servants. Were either of these views applied in this State, we would have no hesitancy in holding that Bradford was not a fellow-servant with those engaged in running the engine which struck him. Manifestly he was in no position to control the movements of the engineer or fireman. His employment by the defendant company only began the morning of his injury, and he had just appeared on the premises of the company as its servant. It does not appear from the record that he and the engine crew were even acquainted with each other, or that either knew that the other was employed by the common master. Nor does it appear that the removal of the boiler and the running of the engine were so connected that those engaged in the one work knew, or were chargeable with knowledge, of the movements of those engaged in the other, or that there was any association or concert of action between them at the time of the injury. As we have stated, in those jurisdictions where the "departmental or conassociation rule" has been adopted, the rule seeks to be founded on the idea that the master is freed from liability to the servant for injuries occasioned by the negligent acts of another servant in cases where the servants are engaged in identically the same labor, or in the

same department of work, at the time of the injury; or their duties are such that they are thrown together and have the opportunity of observing the habits and methods of work of other serv-·ants, and thereby occupy a better position than the master with respect to guarding against the consequences of negligence. But this is not the view adopted by many of the leading text-writers and supported by the best considered decisions; nor does such view obtain in this State. True, in the early case of *Cooper* v. *Mullins,* 30 *Ga.* 146 (78 Am. D. 638), this theory was adverted to as being the foundation of the rule, but, as was pointed out by the present Chief Justice in the case of *Brush Electric Light Co.* v. *Wells,* 110 *Ga.* 192, 196 (35 S. E. 365), such expression of the judge delivering the opinion in the *Cooper* case was obiter; and the "departmental rule," which naturally follows from this line of reasoning, has been expressly repudiated by this court. See *Brush Electric Light Co.* v. *Wells,* supra, and authorities there cited.

In the present case there is no dispute as to the plaintiff and those by whose negligence he avers his injuries were occasioned serving the same common master. The difficulty lies in the determination of the question whether they were, at the time of the injury, engaged in the "same business," within the meaning of the Civil Code, §2610, which declares that "except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business;" and it is with a view of reaching a decision of this question that we are considering the logical foundation of the principle of law codified in that section of the code. The true reason why the master is exempt from liability for damages occasioned by acts of negligence on the part of fellow-servants is very lucidly stated in the oft-quoted language of Judge Shaw in Farwell *v.* Railroad Co., 4 Metc. (Mass.) 49, as follows: "The general rule, resulting from considerations as well of justice as of policy, is that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and, in legal presumption, the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same em-

ployment. These are perils which the servant is likely to know, and against which he can as effectually guard as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation as any others. . . The master, in the case supposed, is not exempt from liability because the servant has better means for providing for his safety, when he is employed in immediate connection with those from whose negligence he might suffer; but because the implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself, and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand towards him in the relation of a stranger. Hence the separation of the employment into different departments can not create that liability when it does not arise from express or implied contract, or from a responsibility created by law to third persons and strangers for the negligence of a servant." The master, therefore, escapes liability, not on the theory that to compel the servants to look to each other for protection against the consequences of negligence will be promotive of public policy, nor on the ground that they should not be allowed any recourse on the master because they were in a better position than the master to guard against the results of each other's negligence; but for the reason that the whole matter falls within the domain of implied contract. After the master has performed the duty of selecting with due care a sufficient number of servants properly to carry on the common work, except with respect to acts the proper performance of which rests as a personal obligation on the master which he can not delegate, the master is not liable for an injury which befalls one fellow-servant by reason of the negligence of another not retained after knowledge by the master of his incompetency or unfitness, for the reason that when the relationship of master and servant is entered into there is no implied contract on the part of the master that he shall be responsible for such negligence, and there is an implied contract on the part of the servant that he assumes the ordinary risks incident to his employment, among which assumed risks is the danger of being injured by the negligence of a fellow-servant properly selected by the master to engage in the same common employment. Such common employment is coextensive with the scope of the business

in which such servant contracts to engage; for the logic of the rule above outlined leads to the conclusion that the servant impliedly contracted to assume the risk of being the sufferer from the negligence of any other servant connected with that same business, whenever and wherever resulting, whether after association together, or upon first contact with each other, or perhaps never being within the sphere of each other's influence, as was the case with the lineman and the engineer in the *Wells* case, supra, as far as the record discloses. And we think such is the intendment of the words "the same business," as employed in the Civil Code, §2610, above referred to.

Applying this view to the case under consideration, we are of the opinion that when Bradford became a servant of the defendant, operating a coal and iron business, to engage as a day laborer in removing a boiler from the furnace plant of that company to its coal mines, for use at the latter in getting out coal to be consumed in the furnace and locomotives of the defendant, in law he became engaged in the same business under a common master with all other servants connected with such coal and iron business, and was, with respect to the crew operating the engine which struck him, a fellow-servant to whom the master is not legally liable for any injuries resulting from negligence on their part Just as a servant, prosecuting the work to do which he was employed, when he moves from one location to another assumes all ordinary risks which may be incident to the new location, in like manner he assumes the risk of negligence of employees engaged in the same business with whom he may be thrown casually,. though each be serving the common master in different capacities,—the gist of the whole matter is that he impliedly assumed *all* risks of negligence flowing from *any* employee of the common master engaged in the same business in which he contracts to serve. In our opinion, Bradford, as an incident of his employment, assumed the risk of being. injured by any negligence of which the engineer and fireman of the engine which struck him may have been guilty, as they, together with Bradford, were serving the defendant as a common master in the same business at the time of the injury; and he is therefore not entitled to recover.

Having reached the conclusion in the case above announced, it

is unnecessary to consider any of the other assignments of error contained in the bill of exceptions.

*Judgment reversed. All the Justices concur.*