### 5676.  DWAN *v.* GREAT EASTERN LUMBER COMPANY.

1. "Employees of a common master, engaged in labor for the furtherance of the general purpose of the business in which they contract to serve, are fellow servants within the purview of the Civil Code, § 2610, providing that, 'Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business.'"  *Georgia Coal & Iron Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228).   A carpenter employed in constructing a dry kiln for use in connection with a sawmill business is a fellow servant of an engineer and a fireman in charge of an engine and tram-cars, employed by their common master in the operation of the business.

2. Where, in order to go to his home, an employee has "knocked off" work at noon on Saturday, without having completed the labors he was employed to perform or having severed his contractual relation with the master, but with the intention of returning to his work, his activities as a servant are merely· dormant and not wholly suspended while he is being transported towards his home on a tram-car operated by his master to facilitate the performance of his work and the work of .other employees, and the engineer and the fireman in charge of the tram-car are his fellow servants.

DECIDED SEPTEMBER 1, 1914.

Action for damages; from city court of Savannah—Judge Davis Freeman. April 2, 1914.

The petition alleges that the defendant is a corporation having its principal office and place of business in Chatham county, where it owns and operates a sawmill and also owns, maintains, and operates a tram-road between its sawmill and a point on the Atlantic Coast Line Railroad called "Big Stick Siding;" that the plaintiff was, on Saturday, May 24, 1913, in the employ of the defendant as a carpenter, engaged in constructing a dry kiln at the sawmill operated by the defendant; that he was occupied in cutting sheeting for the flooring of the dry kiln, and had nothing whatever to do with the operation of the sawmill or of the tram-road, but was engaged solely in the work of constructing the dry kiln, preparatory to its use as a dry kiln; that "it was the custom of defendant to permit its employees to ride upon its tram-cars between said sawmill and said Big Stick Siding;" that on that day a tram-engine and cars of the defendant started to leave the sawmill for Big Stick Siding, about one o'clock in the day; that the plaintiff and the other employees engaged in the construction of the dry kiln "knocked off" work at 12 o'clock in the day, and after eating his dinner he was ready to leave for Savannah, where he resided. "The locomotive of defendant, with several cars in front of it, was at the mill, and it was upon this train that plaintiff and other employees, bound for said Big Stick Siding, were to go. The engine was coupled to the first car by a wooden coupling pole about 15 or 30 feet long. Said coupling pole was about 8 by 6 inches in dimensions. Plaintiff had just left his boarding place to go to his sleeping quarters, to get his coat, and started towards the engine when it started off. At the time a number of the employees of defendant were seated upon the cars. Plaintiff hallooed to the engineer to stop the engine, but it was not stopped,. and, as the engine and cars were moving slowly,,

plaintiff mounted the coupling pole and obtained a seat thereon. While seated upon said coupling pole the said engine started up with a sudden, violent, unnecessary, unusual jerk, which threw plaintiff off the coupling pole and on to his feet, upon the ground. Plaintiff still had hold of the coupling pole and ran along with the train, trying to regain his seat, but as the road was not surfaced, and plaintiff had to step between the ties and on the ties, and the train was accelerating its speed, plaintiff's hold was broken, he was thrown to the ground, the engine ran over him, cutting off his left arm' at the elbow, cutting off his left foot right at the instep, breaking three ribs on his right side, and bruising him about the right temple and the scalp. It was usual and customary for employees to ride on the coupling pole; this was known to the engineer and fireman, who knew that plaintiff was on the coupling pole at the time of the aforesaid jerk." "As soon as plaintiff was thrown to the ground he and other employees on the tram-car hallooed to the engineer to stop the engine. These warnings were not heeded, and though plaintiff ran with the engine thirty feet or more, defendant did nothing to stop the car until plaintiff had fallen." "The engine was manned by an engineer and fireman. Plaintiff was in full view of them, and they knew he was riding upon a coupling pole. They knew that he fell from the coupling. By the exercise of ordinary care the engineer and fireman could have known that plaintiff was upon the coupling pole, and that he had fallen therefrom. By promptly stopping the said engine after the plaintiff fell, the engineer and fireman could have stopped said engine and avoided running over plaintiff." It is alleged that the defendant was negligent in causing the violent, unusual, and unnecessary jerk, and in failing to use ordinary care, and endeavoring to stop said train after the plaintiff fell and was running on the tracks, and that he himself was in the exercise of 'ordinary care; that the engine was running slowly at the time he mounted the coupling pole, and he secured a seat thereon which would have been safe in the absence of any unnecessary or unusual jerk, and after he fell from the coupling pole he did all in his power to avoid injury, but could not have avoided injury by any degree of care. His age and earning capacity, are stated, and it is alleged that his earning capacity has been totally destroyed, and that he has suffered, still suffers, and will always suffer the greatest pain and agony; whereby he has been damaged in the sum of $30,000.

The defendant demurred, on the grounds, that the petition set out no cause of action; that it appears from the petition that the injury was caused by the negligence of a fellow servant or fellow servants of the plaintiff, and not from any act of the defendant; that it appears from the petition that the proximate cause of the injury to the plaintiff was his reckless conduct in attempting to board the moving train, and in attempting to ride in an open and exposed position thereon; and that the petition as a whole does not set forth a breach by the defendant of any duty it owed to the plaintiff. The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

*Osborne & Lawrence,* for plaintiff.

*Gordon Saussy,* for defendant.

WADE, J. (After stating the foregoing facts.) The sole negligence charged against the defendant is the negligence of the engineer and of the fireman in accelerating the movement of the train by a sudden, unusual, and unnecessary jerk, and in failing to stop the train after the plaintiff had been thrown to the ground from his seat on the coupling pole, and was running along the track endeavoring to again mount the coupling, when the engineer and fireman "knew he was riding upon the coupling pole and that he fell from the coupling." If the engineer and the fireman were fellow servants of the plaintiff at the time and place of the injury, no recovery could be had under the allegations made in the petition. Under the doctrine laid down in *Brush Electric Light & Power Co.* v. *Wells,* 110 *Ga.* 192 (35 S. E. 365), *Railey* v. *Garbutt Co.,* 112 *Ga.* 288 (37 S. E. 360), *Roland* v. *Tift,* 131 *Ga.* 683 (63 S. E. 133, 20 L. R. A. (N. S.) 354), and *Ga. Coal & Iron Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228), it is clear that the plaintiff while actually employed in the work of constructing a dry kiln to be used in connection with the sawmill of the plaintiff, and in furtherance of the general business of manufacturing lumber, was a fellow servant of the engineer and the fireman, engaged in running the tram-engine and cars used in furtherance of the same business; and if while so employed he was injured by the negligence of the engineer and the fireman, he could not recover from the common master for the injury.

The conflicting doctrine laid down in *Cooper* v. *Mullins,* 30 *Ga.* 146 (76 Am. D. 638), was held, in *Brush Electric Light & Power*

*Co.* v. *Wells,* and again in *Georgia Coal & Iron Co.* v. *Bradford,* supra, to be mere obiter; and the case of *Bain* v. *Athens Foundry and Machine Works,* 75 *Ga.* 718, was distinguished in *Brush Electric Light & Power Co.* v. *Wells,* supra, and was again declared not to be controlling, in *Colley* v. *Southern Cotton Oil Co.,* 120 *Ga.* 258 (47 S. E. 932). But it is contended that the plaintiff, having "knocked off" work and ceased his employment before the injury occurred, was not, at the precise time of the injury, himself in the employment of the defendant, and hence was not at that time and place a fellow servant of the engineer and the fireman, through whose alleged carelessness the injury was inflicted.

In *Railey* v. *Garbutt,* supra, it appeared that the defendants owned a sawmill and operated a railroad in connection therewith, for the purpose of hauling logs from the woods to their mill, and for the further purpose of transporting their employees back and forth between their mill and the woods; and the plaintiff was employed as a stock cutter and was being transported to his place of work on the train of the defendants when he was injured on account of the negligence of the engineer. The court held that he and the engineer were fellow servants, citing *Brush Electric Light & Power Co.* v. *Wells,* supra, and *McIver* v. *Florida &c. R. Co.,* 110 *Ga.* 228 (36 S. E. 775, 65 L. R. A. 437), as authority for the holding. In *Roland* v. *Tift,* supra, the defendant operated a private railroad in connection with his sawmill, for the purpose of transporting his employees from the mill to their work in the woods, and for hauling logs from the woods to the mill; and the court held that the servants engaged in operating the log train and the servants riding thereon from the mill to their work were fellow servants, and the owner of the mill was not liable to one of the servants injured in the operation of the train by the negligence of his co-servants.

It will be noted in both the *Railey* case and the *Roland* case, supra, that the plaintiffs were being transported *to* their work, and were not away from it after their active service had ceased. "A servant who, at the time of the accident in suit, was being transported on a railway car or other vehicle furnished for the purpose of facilitating the performance of his work, is deemed to have been injured in the course of his employment, and therefore can not recover if the injury was the result of a risk known to and appre-

ciated by him." 4 Labatt's Master and Servant (2d ed.), 4669. It has been held in a large number of cases that "negligence of the servants operating the vehicle in which the injured servant was being transported was one of the risks assumed by him. Under such circumstances, he can not recover on the theory that he was in the position of a stranger, as having ceased, for the time being, to be actively employed in his master's business." Id. "The inability of such employees to recover has been affirmed, both where the accident occurred while they were journeying between two points at which work was to be done, and where it occurred while they were being transported from the place where they resided to the place where they worked. But the operation of the general rule is not confined to cases of the above type. The character of the train on which the servant was being transported is immaterial, provided it was being used as a means of conveyance to take him, in the course of the performance of his contract, to or from the place where his duties called him." Id. 4670.

It is insisted by counsel for the plaintiff that the defense of common employment is not available to the defendant, because the plaintiff was traveling entirely for his own purposes, "and the right of the master to exact the performance of services was not merely dormant, but wholly suspended," and a number of cases, cited in 4 Labatt, supra, 4679, are relied upon to sustain the contention that the relation of master and servant between the plaintiff and the defendant was wholly suspended at the time of the injury. The tram-road used by the defendant's employees, and with its acquiescence and permission, was undoubtedly used for the purpose of facilitating the performance of the work which the plaintiff was under contract to execute, since it appeared in his petition that he resided in Savannah, and that he "knocked off" work on Saturday at noon in order to return to his home in Savannah; which assertion carried with it more than an intimation (and pleadings must be construed most strongly against the pleader) that his contractual relations with the defendant had not been terminated at the time he "knocked off" at midday, or even at the time the injury occurred an hour later, but that he had only left his work temporarily, with the full intention of thereafter returning to the sawmill where he was constructing the dry kiln, and resuming such work. The right of the master to exact the performance of services was not wholly

8

suspended, but merely dormant, and he was still in the employ of the defendant company at the time the injury occurred, notwithstanding the fact that he was not at the moment actually engaged as a carpenter. Nor can it be said that he was traveling for his own purposes, since his labors for the week had closed, and he was traveling to his home on the means of transportation furnished by the defendant for the purpose of enjoying a rest on the Sabbath, and expecting to return and engage in his work for the defendant with renewed vigor thereafter. His transportation to and from his work facilitated the business of the master, and was for the benefit and purposes of the master as well as for his own.

In *Ellington* v. *Beaver Dam Lumber Co.,* 93 *Ga.* 53 (19 S. E. 21), the court held that one who is daily transported *to and from* his work on a railroad used by a lumber company for the transportation of its supplies and products is a fellow servant of another person employed by the same company to keep the tram in repair. In the present case it does not appear that the plaintiff was transported daily to and from his business, but it does appear from his petition that it was the custom of the defendant to permit its employees to ride upon its tram-road between its sawmill and the railroad siding, and he was seeking to avail himself of this custom, as an employee of the defendant, when he sought to board the moving train and suffered the injury complained of. We think the assertion in the petition that the plaintiff and other employees engaged in the construction of the dry kiln had "knocked off" work at 12 o'clock on the day of the injury would not justify the conclusion that his connection with the defendant as an employee had absolutely terminated, but indicated rather that his services as employee were temporarily suspended, and that it was as an employee of the defendant that he sought transportation away from its mill, and it was as such employee that he received the injury alleged through the negligence of his coemployees.

Since, in our view of the case, the plaintiff, as a fellow servant, could not recover, and upon this ground the judgment sustaining the demurrer was proper, it is unnecessary to discuss other grounds of the demurrer.     *Judgment affirmed. Roan, J., absent.*