## 6158.   STEVENS *v.* BIBB MANUFACTURING CO.

RUSSELL, C. J. The evidence in behalf of the plaintiff raised an issue at least as to whether the "second hand," or "spool boss," was a vice-principal of the master and responsible for the injury to the plaintiff. There was evidence that one Ward represented the master in directing the work of other servants and in furnishing the appliances with which they worked. Even if Ward was not a vice-principal, there were circumstances in proof to support an inference that the master was negligent in the performance of his duty of furnishing good spools and of removing those that were defective; and from the evidence the inference is authorized that but for the master's initial negligence in this regard, the plaintiff would not have been injured, even though the injury may have been partly due to the negligence of a fellow servant. For these reasons the court erred in awarding a nonsuit.

*Judgment reversed. Wade, J., dissents.*

DECIDED AUGUST 4, 1915.   REHEARING DENIED OCTOBER 2, 1915.

Complaint; from city court of Americus—Judge Harper. October 13, 1914.

*Wallis & Fort,* for plaintiff.

*McCutchen & Bowden, W. W. Dykes,* for defendant.

WADE, J., dissenting. I can not agree to the conclusion reached by the majority of the court. To me it appears that the case is controlled by the application of the following well-settled rule of law: Where it appears that a master furnished the servant with a number of simple appliances, from which it was the servant's duty to select and use those which were safe, sound, and without defects, the master will not be held liable for injuries resulting

from the use of one of such appliances selected by the servant, the defects of which were at the time plainly apparent to the servant. The defendant (not being a railroad company) can not be held liable for negligence on the part of a fellow servant of the plaintiff.

Mrs. Minnie Stevens brought suit against the Bibb Manufacturing Company for personal injuries, alleging in her petition that at the time she was injured and for about four weeks preceding this time she was employed by the defendant in its mill, in the work of spooling yarn; that while she was working at her spooling-machine and was in the act of tying the thread on one of the spools of that machine, a splinter from an adjacent defective and splintered spool entered the third finger of her hand, near the joint next to the nail, and extended to the next joint or knuckle of that finger, and from the splinter her hand was infected, she suffered from blood-poison, and the injuries complained of resulted. She further alleged that she did not, until after her hand was hurt, see any defect in the spool which inflicted the damage, and that this spool was supplied by the defendant for her use, and was placed on the machine by the defendant without her knowledge; that the defective condition of the spool could have been discovered by the defendant by the exercise of ordinary care in the inspection of the machinery and appliances furnished her to do her allotted work; "that the defective condition of said spool was patent, and the same had been in said dangerous condition for a sufficient length of time for discovery by defendant, had defendant used ordinary care in this respect;" and that she had no knowledge that the spool which caused the injury was on the machine she was operating and was in a defective condition; and could not observe its condition by the use of ordinary care; that she had exercised all ordinary care and diligence in operating said machine, and was in no wise negligent at the time the injury occurred. The precise negligence complained of in the petition was: (1) Defendant failed to exercise ordinary care in furnishing the plaintiff with safe and suitable appliances with which to work, and was negligent in supplying her with a defective appliance with which to do the work she was employed to perform,— namely, the defective spool described in the petition; (2) in placing the said defective spool on the machine at which the plaintiff was at work; (3) in not inspecting and removing the spool, which was defective and splintered, from the machine at which the plain-

tiff was employed and from the room in which she worked; (4) in not warning the plaintiff of the "dangerous condition and qualities" of the spool. At the close of the evidence in behalf of the plaintiff, the court awarded a nonsuit, and the case came to this court on exceptions to this judgment.

1. The plaintiff testified, that the defendant furnished spools in a box to be placed on the machine at which she worked, and that she used 25 or 30 of such spools on the machine; that it was her duty to place the spools on the bobbins and to select the spools to be used from the supply furnished in the box; that she observed that this particular spool was defective and splintered, and she removed it from the machine and threw it in the box and that Will Ward (who she said worked in the same room with her and at the same character of work, but who she alleged was a "second hand") took it and put it back on the machine, and told her she must use it; that thereafter a splinter entered her finger from the defective spool, while she was tying a thread on an adjacent spool. The petition alleged that the defendant placed the defective spool on the machine at which the plaintiff was employed, but the proof shows that the above-mentioned Will Ward in fact placed this spool upon the machine. Also, the plaintiff testified that she did not know that Ward had placed the defective spool back on her machine, and she likewise testified that she had before seen spools with splinters in them, and she knew she had to watch out for splinters, and therefore herself took off the worn spool and laid it in the box in front of her, and that she saw Ward take off the good spool with which she had replaced the defective spool, and that she "saw him take that up," but she said she did not know that Ward was going to put the defective spool on the machine, as she did not see it. She further said that she was crying at the time her finger was injured, because Ward had been cursing her and abusing her, "and he [Ward] put that spool back on," and that Ward told her that if she was going to remove the defective spool she could quit work. There is more evidence from this witness to the same effect; from all of which we may conclude that she not only had full knowledge, at the time the defective spool was replaced on the machine by Ward, that it was defective and liable to cause her injury, but that she had protested so vehemently against the placing of the defective spool back on the machine that Ward warned her that if she took the spool

off he would report the matter, and she could, as she expressed it, "take her time," or cease working for the defendant. She herself handled the spool and noticed its defects before she removed it; and though she said she did not see Ward at the exact moment when he replaced the spool on the machine, construing her testimony most strongly against her and drawing therefrom the only reasonable inference possible, we are forced to conclude that she did in fact *know,* before she began tying the thread on the adjacent spool and just before the splinter from the defective spool entered her hand and caused the injury, that Ward had already replaced a good spool on the machine with the defective spool which she had previously discarded. She continued her work with full knowledge of the danger which might come from the splintered spool, as she says that she knew that she must look out for splintered spools, and it was her duty to select sound or perfect spools for use; and therefore she herself voluntarily assumed the risk. This evidence certainly does not sustain the allegation that the plaintiff "had no knowledge that the said spool which caused said injury was on said machine and was in a defective condition, and could not observe its condition by the use of any ordinary care." She obviously knew the danger a defective spool might subject her to, and it is equally clear that she knew this defective spool had been placed back on the machine by Ward before the injury occurred, and yet she continued to operate the machine notwithstanding the obvious risk.

The plaintiff alleges, as already set out, that the defendant failed to exercise ordinary care in furnishing her with safe and suitable appliances, and was negligent in supplying her with defective appliances, with which she was to do the work she was employed to do. This allegation was not sustained by the evidence, which disclosed that the defendant kept a stock or number of spools necessary for her work, which were easily accessible to the plaintiff at the point where she was required to work. The master was not required to do more. It was the duty of the servant to substitute a perfect appliance, under such circumstances, whenever one actually in use appeared to her to be worn out or defective; and the splintering of a spool resulting from usage (which, so far as the evidence discloses or so far as is alleged in the petition, may have been originally perfect) was apparently to be expected and was one of the hazards of the business undertaken by the plaintiff when she engaged herself

to do this particular work. In the discussion in 5 Labatt's Master and Servant, § 1678, p. 5182, of employer's liability acts, it is said: "When the master keeps a readily accessible stock of simple appliances, he is not bound under the statute, any more than at common law, to see that a servant asks for a new one when that which he has been using is worn out." There is no allegation or proof that the spool which the plaintiff removed from the machine as defective was defective originally, or defective because of any fault in its construction or any imperfections in the materials from which it was manufactured. These charges of negligence, therefore, were not sustained by the evidence. As already said, the allegation that the defendant placed the defective spool on the machine was not sustained by proof that one Will Ward placed this defective spool thereon, notwithstanding the evidence that Ward had some authority to supervise the room in which the plaintiff worked. The next allegation of negligence,—that the defendant failed to inspect and remove the defective and splintered spool from the machine where the plaintiff worked and from the room in which she was employed,—does not appear to be supported by proof showing that the plaintiff herself had the best opportunity to discover the defective condition of the splintered spool and to know of the dangers incident to its use, and that the final duty of inspecting before using the spool clearly rested upon the plaintiff, since she had the last opportunity for such inspection.

The fact that the duty of inspecting the appliances rests generally upon the master can not, of course, avail the servant to whom a particular duty of inspection is delegated, where that servant is injured by a defect which she negligently fails to discover. *Dartmouth Spinning Co.* v. *Achord*, 84 *Ga.* 14 (10 S. E. 449, 6 L. R. A. 190). The plaintiff said: "I have the box to pick out the spool I want to put on there; it is my business." And again: "I knew I had to watch out for splinters. It was my business to watch out for splinters." It was clearly her duty to inspect the spools used by her, and if her faulty inspection failed to reveal defects, she herself would alone be responsible for the resulting injury to her. She admits, however, that she discovered the defects in this spool, was well aware of the dangers which might follow its use, and protested, to the point of tears, against the action of Ward in again placing the defective spool on the machine after she had removed it there-

from, so that she voluntarily assumed the risk and is alone chargeable with the consequences resulting from the use of this defective appliance.

Again, the allegation that the defendant was negligent in failing to warn the plaintiff of the dangerous condition and the qualities of the spool, is not supported by the evidence, since from the testimony of the plaintiff she appears to have herself first discovered the defective condition of the spool, and of course there was no duty upon the master to warn her of the extent of a danger with which she was already acquainted, and which she says she fully understood. See *Commercial Guano Co.* v. *Neather,* 114 *Ga.* 416 (40 S. E. 299) ; *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35 (51 S. E. 13) ; *Elliott* v. *Tifton Mill & Gin Co.,* 12 *Ga. App.* 498 (77 S. E. 667) ; *Holton* v. *Hebard Cypress Co.,* 13 *Ga. App.* 273 (79 S. E. 85). It is perfectly clear, from the evidence of the plaintiff, that she had equal means with the defendant of knowing the danger which might result from the use of the defective spool. She alleges in her petition that the defect was patent to the master, and states, as a reason for her failure to know of the condition of the spool at the time of the injury, that the machinery was in motion, but her evidence shows that the spool was placed on the machine in her presence and over her protest and despite her tears; that she had observed the splinters on the spool and had rejected it, and knew that Ward intended to place it back on the machine, as he picked it up for that purpose and told her that unless she continued to use it she would lose her employment. In her testimony there is nothing to indicate that she did not know at the time the injury was inflicted that the spool was on the machine, as the machine was immediately before her and the defect in the spool was plainly visible to the eye, and her opportunities of knowing must have been equal to those of the master or of any one else. *Daniel* v. *Forsyth,* 106 *Ga.* 568 (32 S. E. 621) ; *Western & Atlantic R. Co.* v. *Bradford,* 113 *Ga.* 276 (38 S. E. 823) ; *Stewart* v. *Seaboard Air-Line Railway,* 115 *Ga.* 624 (41 S. E. 981) ; *Ludd* v. *Wilkins,* 118 *Ga.* 525 (45 S. E. 429) ; *Banks* v. *Schofield's Sons Co.,* 126 *Ga.* 667-670 (55 S. E. 939) ; *Short* v. *Cherokee Manufacturing Co.,* 3 *Ga. App.* 377 (59 S. E. 1115) ; *Central Ry. Co.* v. *Henderson,* 6 *Ga. App.* 459, 462 (65 S. E. 297). Construing the plaintiff's evidence most strongly against her, it can not be doubted that she knew that the

defective spool was back on the machine at the time she resumed her work and before her hand was injured by a splinter therefrom. She stated that Ward took off the good spool she had put on the machine in place of the defective one, and that she saw him do this, and in response to the question (page 6 of the record), "When did you first know that Mr. Ward had put that spool back on?" she said: "I was standing there, and he said, 'You will have to spool with this spool if you are going to spool.' I said, 'Don't put that on;' and he said, 'You will have to spool with this spool, *and put it back on*" (italics ours). It is obvious that whether her eyes rested on Ward or not at the exact moment the defective spool was placed back on the machine by Ward, she, nevertheless, according to her own testimony, knew that the defective spool had been placed back on the machine before the injury was inflicted upon her by a splinter thereon. She does not appear to have been so engrossed in the service of her master that she was thereby prevented from perceiving the danger, but, to the contrary, she says she recognized the danger and protested vigorously against the substitution of the defective spool for the good spool she herself had just placed on the machine.

2. Under the testimony of the plaintiff, it is clear to me that Ward was her fellow servant, and consequently the defendant would not be liable for injuries resulting from his acts. The evidence shows that one Plunkett was the superintendent, and the plaintiff testified: "I went to Mr. Gamble for my instructions as to how I was to work. He is the one who gave me the job." The evidence of the plaintiff further shows that one Lonnie Green was the one who gave the spoolers instructions, and that he was "the spinning and spooling-room boss." She testified: "Lonnie Green was the foreman in my room. He was the man who put me to work, Mr. Gamble hired me. He was the man who gave me orders. He was the man I ought to obey. Of course I had to obey him." Will Ward did not put the plaintiff to work or give her instructions as to how to work, nor did he keep her time. The plaintiff testified: "Lonnie Green is the man who kept my ticket. He was the boss of me and the second hand." (the "second hand" referred to being Ward). Ward had no authority to discharge the plaintiff; for she said: Lonnie Green "had authority to discharge us, and we were under his orders." Ward had only the right (as she stated) to

report her to Green; and she stated further that Ward was not foreman, but was "head hand;" that Ward was "second hand;" "he worked around there in that room; he worked like I have to work; he worked with his hands. He did a like kind of work in the mill. He tended the spinning-room and the spooler-room. He tended it with the hands. He had the thread taken off and see the hands kept the spinning-frames running. I never went in the spinning-room. I staid at my own work. He was at work all the time with his hands." She explained further that Ward would report to Green if the hands failed to keep up their work properly. It is unnecessary to go into any discussion of the fact that the superior-servant rule is not applied in Georgia (*Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609, 56 S. E. 839, 10 L. R. A. (N. S.) 772), or to discuss decisions of the Supreme Court upholding the award of a nonsuit where the proof showed that the injury complained of resulted from the negligence of a boss or foreman directing a job. *McDonald* v. *Eagle & Phenix Mfg. Co.,* 67 *Ga.* 761, 68 *Ga.* 839; *Stanley* v. *Richmond & Danville Extension Co.,* 72 *Ga.* 202; *Cates* v. *Itner,* 104 *Ga.* 679 (30 S. E. 884); *Cedartown Cotton Co.* v. *Hanson,* 118 *Ga.* 176 (44 S. E. 992). The rule is well settled in Georgia that where servants are subject to the same general direction and are under the control of the common master, and their labor conduces to the same general purpose, they are fellow servants. In other words, control and direction by the same general master in the achievement of the same general object is, broadly speaking, the test by which we may determine whether employees are fellow servants. See *Hamby* v. *Union Paper-Mills Co.,* 110 *Ga.* 1 (35 S. E. 297); *Winn* v. *Fulton Bag & Cotton Mills,* 15 *Ga. App.* 33 (82 S. E. 586); *Dwan* v. *Great Eastern Lumber Co.,* 15 *Ga. App.* 108 (82 S. E. 666). "Employees of a common master, engaged in labor for the furtherance of the general purpose of the business in which they contract to serve, are fellow servants within the purview of the Civil Code, § 2610, providing that, 'Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business.'" *Georgia Coal & Iron Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228). As was said in *Ellington* v. *Beaver Dam Co.,* 93 *Ga.* 53-57 (19 S. E. 21), "It is subjection to the same general control, coupled with an engagement in the common pursuit, that afford the test "as to whether or not

employees are fellow servants. In *Dennis* v. *Schofield's Sons Co.,* 1 *Ga. App.* 489 (57 S. E. 925), it was said that "the coemployee, however important his official title, who is doing mere servant's work, or is engaged merely with the ordinary details of the labor, is to be regarded as a fellow servant in the business at hand." The plaintiff said that Ward worked just as she did, and there is nothing in her testimony to show that he was not her fellow servant. See *Standard Cotton Mills* v. *Collum,* 6 *Ga. App.* 426 (65 S. E. 195). Ward exercised none of the duties of a master, but, according to her testimony, in addition to doing work of the same character that she did, he merely supervised the work of his fellow servants and reported to Green if they failed to discharge their duties properly; and, as held in *Moore* v. *Dublin Cotton Mills,* supra, "Mere supervision, and nothing more, by one of a number of servants, over the work in which they are engaged, will not necessarily raise the employee from the position of a fellow servant to that of a vice-principal. Supervision of the work, when coupled with the discharge of other duties in connection therewith, may have this effect." Ward had no other duty in connection with the work of the plaintiff than the duty of supervision, so far as her testimony discloses. He did not put her to work, nor instruct her how to work, nor in any way have control over her work or the management of the machine operated by her, but he merely had power to supervise and report to Green. He had no authority, so far as the record discloses, to direct the plaintiff to use one spool rather than another, and certainly the evidence does not disclose that he was expressly empowered by the master to exercise any such control. Ward was not vice-principal, for he was not one who by authority of the master was "discharging one of the non-delegable, unassignable duties of the master." *Southern Railway Co.* v. *Diseker,* 13 *Ga. App.* 799-808 (81 S. E. 269).

To sum up in a few words, I do not think any negligence on the part of the defendant in furnishing a defective appliance or in failing to furnish a safe and proper appliance for the use of the plaintiff in doing her work, is disclosed by the evidence; and since the injury complained of resulted from the act of a fellow servant of the plaintiff, no recovery was, in my opinion, authorized by the evidence, and therefore the court did not err in awarding the nonsuit.