### 860. SEABOARD AIR-LINE RAILWAY v. CHAPMAN.

1. In viewing the conduct of an intoxicated person, for the purpose of determining his negligence or contributory negligence, the state of mind produced by the intoxication may be disregarded; for he will be judged as if the conduct occurred while he was in the possession of his normal mental capacity.

2. The duty of a master to use ordinary care to keep his premises and to conduct his business in such manner that his servants may perform their duties in safety is but a phase of the broader and more anciently-recognized doctrine of the common law, that every person who expressly or impliedly invites another to come upon his premises or to use his instrumentalities is bound to use ordinary care to protect the invited person from injury.

(a) It will not be presumed or implied against a master, engaged in lawful business, that he invited his servants to come upon his premises or to use his instrumentalities for the purpose of committing crime, or that he should anticipate their doing so.

(b) A servant who enters upon the premises of his master, not for the lawful discharge of a duty, but for the purpose of violating the law, is entitled to no higher degree of protection from the master than an outsider under similar circumstances.

(c) In North Carolina it is a misdemeanor for an intoxicated person to take charge of a locomotive as engineer. Therefore, in that State, an engineer who, while intoxicated, is attempting to get upon an engine to take charge of the same is not upon the premises of the railway company in the discharge of his duty, but is there attempting to commit a crime; and the company and its other servants do not owe him that degree of care which they owe to employees there in the line of duty, but owe him only that degree of care which they owe to other intruders.

(d) A railway company, when sued by an engineer for injuries received by him in the State of North Carolina through the unsignaled moving of a locomotive which he was attempting to mount for the purpose of taking charge of it, may plead and prove, in defense to the action, that the engineer was intoxicated, and that the statutes of North Carolina make it a misdemeanor for an engineer to be in charge of a locomotive while intoxicated. This is true although the engineer was injured before his attempt to get upon the engine and to take charge of it had proceeded far enough to render him amenable to prosecution under the statute.

Action for damages, from. city court of Atlanta—Judge Reid. November 13, 1907.

Argued January 22,—Decided September 28, 1908.

Chapman was employed in the yards of the defendant at Hamlet, North Carolina, as a yard-engineer, and was what is known as an extra man; that is to say, he was not regularly assigned to any particular engine, but was used to fill vacancies caused by the absence of other engineers. For several days prior to the date on which he was hurt, he had been running a yard-engine, which was regularly operated by engineer Sanders, who was absent on account of sickness. On the morning in question Sanders had returned to work, and was engaged in operating the locomotive, but, by reason of his failure to register his return, according to the practice of the employees, the fact was unknown to Chapman, and he therefore went out, shortly after seven o'clock, to relieve the night-engineer and to take charge himself. He approached the locomotive upon the fireman's side, and, according to his contention, just as he was in the act of mounting and as he was upon the steps, the engine

was moved suddenly backward, without the ringing of bell or the giving of other audible signal, and he was thrown under the wheels of the engine. He did not see the engineer, and the engineer did not see him. A rule of the company required the bell to be rung before the engine was moved. The plaintiff pleaded and relied upon a statute of the State of North Carolina as follows: "Any servant or employee of any railroad company operating in this State, who shall suffer injury to his person, or the personal representative of any such servant or employee who shall have suffered death in the course of his service or employment with said company, by the negligence, carelessness, or incompetency of any other servant, employee or agent of the company, or by any defect in the machinery, ways, or appliances of the company, shall be entitled to maintain an action against such company;" and set up that he was in the line of his duty at the time he was hurt. The company denied negligence on the part of itself and its servants, and set up the plaintiff's own lack of care. Numerous witnesses testified that the plaintiff was drunk, and even staggering, as he approached the engine; he admitted that he had taken a drink before breakfast, but denied that he was in any way intoxicated. The issue as to this was sharply drawn.

On the trial an amendment to the answer was offered, which the court refused to allow, in which the defendant pleaded, that, by a statute of North Carolina, "if any person shall, while in charge of a locomotive engine running upon the railroad of any such corporation, . . be intoxicated, he shall be guilty of a misdemeanor;" and that the plaintiff was intoxicated at the time he received his injuries, and was not entitled to recover damages. The defendant offered this statute in evidence, and the court rejected it as irrelevant. The defendant offered in evidence, separately, the following rules of the company, which were excluded by the court. Rule 7: "The use of intoxicants, while on duty, is prohibited. Their habitual use, or the frequenting of places where they are sold, is sufficient cause for dismissal." Rule 19: "Intoxication, or the habitual use of intoxicating liquors by employees, is strictly forbidden, and will be sufficient cause for dismissal from the service of the company. Total abstinence in this particular, and in the use of opium or other narcotic drugs, is necessary to safety in operating the road, and employees in any capacity who

frequent gambling houses or places where liquor is sold will not be retained in the service. Employees will not be prevented from obtaining meals at hotels which maintain a bar, but are cautioned not to frequent such bar."

As to the plaintiff's being intoxicated at the time of the injury, the court, in substance, instructed the jury that if they found that the plaintiff was intoxicated at the time he was injured, they might consider this fact in determining whether he was guilty of contributory negligence or a failure to exercise due care. The court further charged: "A man who voluntarily becomes intoxicated or drunk neither gains nor loses in his civil rights. The law requires that he be judged by the standard of every prudent man in sober normal condition, acting under the same or similar circumstances. In other words, the railway company in this case would not be excused, if it was negligent and caused injury to the plaintiff by its negligence, from liability, because the plaintiff was drunk, if he was drunk (and you settle that question for yourselves), provided the plaintiff was in the exercise of ordinary care; that is, just that care which every prudent man would have exercised under the same or similar circumstances. On the other hand, the plaintiff can not excuse himself, under the law, from the failure to exercise the care which every prudent man would have exercised under the same or similar circumstances, by the fact, if it was a fact, that he was intoxicated. In other words, gentlemen, the law, in the administration of civil rights, treats all people alike, and treats all people as normal, sober people, so far as this question of drunkenness is concerned; and, as I said in the beginning, the plaintiff neither gains nor loses by the simple fact, within itself, of being intoxicated or drunk, if he was; and you settle the question whether he was or not. The question is allowed to go to you to be considered on the proposition whether the plaintiff was in the exercise of ordinary care or not. If he was intoxicated or drunk, and failed to exercise that care which every prudent man would have exercised under the same or similar circumstances, he will have to take the consequences. His intoxication or drunkenness would not excuse him. On the other hand, if he did exercise the degree of care which every prudent man would have exercised under the same or similar circumstances, then, if he was drunk or intoxicated, that fact, within itself, would not bar his right of recovery."

It seems that in North Carolina slight fault on the part of the servant will not bar a recovery in an action against the master, but that only a dereliction gross enough to amount to a failure to exercise ordinary care and diligence will have this effect.

*Brown & Randolph,* for plaintiff in error.

*Berner, Smith & Hastings,* contra.

POWELL, J. (After stating the facts as above.)

It must be kept in mind throughout this opinion that this cause of action arose in North Carolina, and the substantive rights of the parties are to be measured by the laws of that State. Thus viewed, we find no error in the charge of the court as to the effect of the plaintiff's intoxication, so far as the question of contributory negligence is concerned. In that State, it seems, the employee can recover from the employer for the negligence of a fellow servant, subject to the defense of contributory negligence, on the same terms as if the injured employee were a third person, on the premises by invitation or under other rightful circumstances. As to these things, each party owes to the other the duty of exercising ordinary care. That State and our own have the same rule as to the effect of a person's intoxication, in the determination of the quantum of care expected of him. He must judge and act with the same skill and caution as if he were a sober person. Compare *Rollestone* v. *Cassirer,* 3 *Ga. App.* 161 (59 S. E. 442), with Smith v. Railroad Co., 114 N. C. 728 (19 S. E. 863, 25 L. R. A. 287).

It is our opinion, however, that the court erred in not allowing the defendant to plead and prove the North Carolina statute by which it is made a misdemeanor for any person to be in charge of a locomotive engine while intoxicated. Its relevancy to the case inheres in the question as to the defendant's negligence, rather than in the question as to the plaintiff's contributory negligence. The principal negligent act upon which the plaintiff relies for a recovery is, that an engineer of the defendant company put the engine in motion without causing the bell to be rung. To show that he was one of the persons to whom this duty of ringing the bell was due, the plaintiff alleged that at the time of the injury he was an employee, conducting himself within the line of his duty. Some such allegation was necessary on his part; for, although the rule required the ringing of the bell, and although a failure to

give this warning would, in a general and abstract sense, be neglect, still, unless the plaintiff was one of those persons for whose benefit this duty was required, the omission would not be actionable negligence as to him. "The plaintiff who has established the fact that a defendant has been guilty of doing what he ought not to have done, or of not doing what he ought to have done, has something further to do, in order to show a cause of action in his behalf; he must show not only that he has directly and proximately suffered injury therefrom, but also that he is so related to the duty and the neglect thereof that he has a right to complain. Therefore, although an act be negligent, it does not afford a given plaintiff a cause of action, unless it is negligent *as to him.*" *Platt* v. *So. Photo Material Co.,* ante, 164 (60 S. E. 1071). It seems sufficiently clear to justify the simple statement, without elaboration, that if the plaintiff in this case were a trespasser, and without any invitation from the company attempted to mount the engine, and the engineer, without actual or constructive knowledge of his presence, moved the engine and hurt him, he could not recover, although the bell was not rung. By alleging that he was an employee in the line of his duty when he approached the engine and attempted to mount it, the plaintiff shows a right to be upon the premises, a right to be where he was, a right to claim the usual warning before the engine was moved. Now, the defendant was entitled to show anything which would negative the plaintiff's right to be where he was and would place him in the attitude of a trespasser; and it must be remembered that an employee, when not in the line of or in the discharge of some duty of his employment, stands in relation to the master and to the master's other servants just as any other member of the general public would. *Snowball* v. *Seaboard Ry.,* 130 *Ga.* 85 (60 S. E. 189); *S., F. & W. Ry. Co.* v. *Flannagan,* 82 *Ga.* 580 (10), (14 Am. St. R. 183, 9 S. E. 471). Now, if the plaintiff was intoxicated at the time of his injury and was trying to get upon the locomotive to take charge of it as engineer, he was not there in an effort to perform a duty, but to violate the law; for to take charge of an engine while intoxicated is a crime in North Carolina. The law implies an invitation from the master to the servant to enter and remain upon and to move about on his premises, and to handle, use, and be in range of his tools, appliances, and machinery, so far as necessary to the performance

of the servant's duty (indeed, it is out of this implied invitation, and the common-law principles regulating the duties of a landowner to invited persons upon his premises, that the courts have largely constructed that portion of our jurisprudence which relates to the duties of the master as to the servant's safety while he is engaged in the work) ; but, prima facie at least, it will not be presumed that a master whose occupation is lawful invites a servant to come upon his premises or to use his instrumentalities to violate the law. *Rollestone* v. *Cassirer,* supra. If the plaintiff was intoxicated, the very moment he became so, every rule, usage, instruction, direction, or command of the master, given him while he was sober, by which he was authorized to enter upon the locomotive and to take charge of it, became immediately abrogated, and remained so until he became sober, or until the master, with knowledge of his drunkenness, gave him new authority. If he was intoxicated and came upon the company's premises for the purpose of violating the law, he was no longer an employee in the line of his duty, but was a mere trespasser, or quasi trespasser, and entitled to no higher degree of care than any other person who might have attempted to climb upon the engine to violate any other criminal statute would have been. The necessary result of the court's action was to deprive the railway company of this line of defense.

In the most excellent brief filed for the defendant in error, and in the concise and pointed argument of his counsel, the insistence is made that any error in the rejection of this statute and of the rules of the company upon the subject of intoxication is harmless, because the court admitted to the jury all the evidence offered upon the subject of the plaintiff's intoxication, and their verdict was, in effect, a finding that he was sober. Not so; for the jury might have found that, although the plaintiff was intoxicated, he managed to conduct himself on the particular occasion just as a sober, prudent man would have done, and that, despite his drunkenness, he did no negligent act; and in this event, under the charge of the court, he would have been entitled to recover. The statute of North Carolina, however, does not forbid merely the intoxicated engineer, who is not capable of exercising ordinary care and diligence, from taking charge of a locomotive; but, in wider terms, makes it a misdemeanor for any intoxicated person to do so. Under this statute intoxication, not conduct, is the criterion.

Since there is to be a new trial, we may add that the court committed *no error in* excluding rule 7, referred to above, but should have admitted rule 19. This last-named rule is especially relevant in connection with the North Carolina statute on the same subject.                                        *Judgment reversed.*

### ON MOTION FOR REHEARING.

Counsel in the petition for rehearing make the point that in the original decision we considered the case as if the negligence were solely that of the engineer who moved the engine. They insist that the negligence consisted in the fireman's failure to ring the bell. The petition is so worded as to rely upon the negligence of both these employees. Of course, the thing that hurt the plaintiff was the fact that the engineer moved the engine suddenly and before the usual warning had been given. The failure to ring the bell could not have hurt the plaintiff, but it did tend to relieve his own action, in getting on the engine at that particular moment, from an imputation of contributory negligence. We concede that it is true, as counsel insist, that the rule alleged to have been violated reads, "The engine bell must be rung before the engine is moved," and not "the engine must not be moved until the bell is rung," but it is our opinion that the one thing, of necessity, connotes the other.

Counsel insist that the fireman who participated in the alleged negligence had actual knowledge of the plaintiff's presence at the time of his injury, and that through the fireman's actual knowledge the engineer had constructive knowledge, and that in light of this knowledge of his presence, actual to the one servant and constructive to the other, they owed him ordinary care, even though he was a trespasser. In our opinion, it is seldom that constructive knowledge of a trespasser's presence is sufficient to raise a duty toward him; generally actual knowledge is required; no such constructive knowledge as is here asserted is sufficient. Besides, even if ordinary care and diligence ever becomes the true standard of the measure of duty owed a trespasser, it is to be remembered that the same conduct may fulfil this standard as to a person in the situation of a trespasser, and not fulfil it as to a person differently situated. As to how the quantum of ordinary diligence varies in cases of trespassers, see *DeVane* v. *A. B. & A. R. Co.,* ante, 136 (60 S. E. 1079); *Charleston Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441

(57 S. E. 1064). The controlling error in the trial under review was that the court, by striking the defendant's plea, shut off all inquiry into the question of the relative rights and duties of the respective parties to the transaction, as viewed from the standpoint that the plaintiff came to the engine to violate the law, and was therefore a trespasser.          *Rehearing denied.*