### 15375.   HOLLIDAY *v.* MERCHANTS & MINERS TRANSPORTATION COMPANY.

1. Where an employee upon a ship, while the ship was docked, ·obtained leave for a few hours to go into an adjacent city, he was in the course of his employment when he attempted, on his way back to the ship, to enter a gate maintained by his master between its private docks and terminals and a public street, for the entrance and exit of the master's employees, the relation of master and servant not being suspended, though perhaps being dormant.

2. Although such employee entered his contract of employment in the city of Baltimore, Maryland, to perform service as an oiler on board a ship plying between that city and Savannah, Georgia, and other southern ports, he and one employed by the same master as a watchman at such

gate, for the purpose of controlling the entrance and exit of the master's employees, were fellow servants, they both being engaged in labor for the furtherance of the general purposes of the same business of the common master.

3. Where the watchman, while acting within the scope of his employment, killed the other employee upon a dispute arising about the right of the latter to enter the gate, the injury and death of the one arose from the misconduct of the other as a fellow servant about the same business, and the master was not liable in an ordinary suit for damages therefor.

DECIDED AUGUST 11, 1924.

Action for damages; from city court of Savannah—Judge Freeman. January 26, 1924.

Application for certiorari was made to the Supreme Court.

Mrs. Della Holliday sued the Merchants & Miners Transportation Company, in the city court of Savannah, for damages on account of the homicide of her son Eugene Holliday, upon whom she alleged she was dependent. The petition shows the following facts: The defendant is a common carrier by sea, operating steamships between the port of Baltimore and the port of Savannah, and other southern ports. It owned and controlled certain terminals and wharves at Savannah, at which its ships docked and unloaded. It had in Chatham county an office and agency, and had there regularly in its service ten or more employees in the same business. The plaintiff's son was employed by the defendant in Baltimore, Maryland, to do service as an oiler on board the ship "Juaniata," and was on board as such employee when the ship arrived and docked at the port of Savannah on March 23, 1923. Thereafter during the same day he obtained "short [shore?] leave," and went away from the ship and the terminals up into the city. Within approximately two hours he started back to the terminals in order to go aboard the ship. The defendant had and maintained a private gate, which it had erected at the foot of a street, for the purpose of closing its terminals, and had in charge thereof a watchman, Hallman, whose duty it was to protect the company's terminals from trespassers, to guard its property, and to supervise and control the entrance and exit of the defendant's employees. The petitioner's son, when he reached this gate on his way back to the ship, found it closed. He was about thirty minutes late, and tried to go through it. Thereupon the watchman, who was inside and on the terminals, refused to allow him to enter, although informed

that he was a member of the crew of the ship and wanted to go aboard. Upon the refusal to allow him to enter an argument arose, and the watchman, becoming angered, picked up a wooden scantling, extended it through the gate, and therewith struck the plaintiff's son, inflicting an injury from which he died. It is alleged that the watchman, in refusing the decedent entrance into the gate and in striking him to prevent his entering, was acting in the prosecution, and within the scope, of the business of the defendant.

The defendant demurred upon the grounds, that the petition set forth no cause of action, and that it appeared therefrom that whatever cause of action, if any, the plaintiff might have was one that should be prosecuted before the Georgia Industrial Commission, or a like tribunal in the State of Maryland. The court sustained the demurrer, and the plaintiff excepted.

*Shelby Myrick, Edwin A. Cohen, Nimocks & Nimocks,* for plaintiff.

*Adams & Adams,* for defendant.

BELL, J. (After stating the foregoing facts.)

The case is one which suggests a number of questions in relation to the application of the Georgia workmen's compensation act. The plaintiff in error insists that this law is excluded because the decedent's employment was maritime. This position is clearly untenable, for the reason that the homicide occurred on land. State of Washington *v.* Dawson, 264 U. S. 219 (44 Sup. Ct. 302), and cases therein cited. See also annotations 11 A. L. R. 1145; 25 A. L. R. 1008. In tort cases the principal test of admiralty jurisdiction is the locus of the injury. 1 R. C. L. 417, § 19. For reasons to be more fully indicated below, we cannot agree that the act of Congress of June 10, 1922 (Federal Statutes, Annotated, Supp. 1922, p. 225), purporting to except the master and members of the crew of a vessel from the workmen's compensation laws, has any bearing on the case, irrespective of the actual validity and effect of that act. See Washington *v.* Dawson, supra.

Another question suggested is whether the decedent and the defendant could be subject to the workmen's compensation act, in view of the fact that the contract of employment was made in another State, and contemplated services only upon the sea. There are decisions holding that the compensation laws, as to parties who may elect to accept or reject their provisions, create an incident

to the contract of employment. Does the law of this State operate contractually? If so, could it be said that the decedent and the defendant had it in mind when they made their contract in Maryland, with no other duties to be performed in the State of Georgia than as indicated in the petition? We do not think it at all necessary to enter into a discussion of these questions at this time. See 28 R. C. L. 724, §§ 19, 20. State ex rel. Chambers *v.* Hennepin County, 139 Minn. 205 (166 N. W. 185, 3 A. L. R. 1351); Crane *v.* Leonard, 214 Mich. 218 (183 N. W. 204, 18 A. L. R. 292); Reynolds *v.* Day, 79 Wash. 499 (140 Pac. 681, L. R. A. 1916A, 432, 5 N. C. C. A. 814, 815); Spratt *v.* Sweeney, 168 App. Div. (153 N. Y. Supp. 505, 9 N. C. C. A. 918); Post *v.* Burger, 216 N. Y. 544 (111 N. E. 351, Ann. Cas. 1916B, 158, 10 N. C. C. A. 888); State ex rel. Jarvis *v.* Daggett, 87 Wash. 253 (151 Pac. 648, L. R. A. 1916A, 446, 10 N. C. C. A. 688); American Radiator Co. *v.* Rogge, 86 N. J. L. 436 (92 Atl. 85, 94 Atl. 85, 7 N. C. C. A. 144); In re Gould, 215 Mass. 480 (102 N. E. 693, Ann. Cas. 1914D, 372, 4 N. C. C. A. 60); Kennerson *v.* Thames Towboat Co., 89 Con. 367 (94 Atl. 372, L. R. A. 1916A, 443).

Clearly the present action would not be affected on demurrer thereto by the possibility of a workmen's compensation law in the State of Maryland. We could not presume that there is such a law in that State. Nothing else appearing, we would take it that the common law prevails there.

It is also insisted in the briefs for the plaintiff in error that her case is not ousted by the compensation act of this State, because the decedent was killed by the wilful assault of a fellow servant, and that his death did not arise out of his employment, it not appearing that the employer should have known of or anticipated the slayer's violent or vicious character. We think that the cases are generally to the effect that, where a servant is injured by a fellow servant in a dispute *arising over the conduct of the master's business,* the injury will not be held not to arise out of the employment though it may have been unjustifiably and wilfully inflicted, whether the vicious or violent character of the assailant was known or should have been anticipated by the master. We do not undertake to say what should be the rule under the Georgia act. Compare *Pinkerton National Detective Agency* v. *Walker,* 30 *Ga. App.*

91 (117 S. E. 281). Upon the subject generally, see the cases and citations in the following: 15 A. L. R. 574, 576, 584, 586, 588, 589; 21 A. L. R. 758; 6 N. C. C. A. 1010, 1030; 16 N. C. C. A. 930, 934; 17 N. C. C. A. 962, 963; 18 N. C. C. A. 1048, 1049, 1054; 11 N. C. C. A. 240, 243; 18 N. C. C. A. 1050-1053; 14 N. C. C. A. 224; 8 L. R. A. Digest, Workmen's Compensation, §§ 47, 50.

If the decedent and the transportation company were *otherwise* subject to the provisions of the compensation law, the mere fact that the plaintiff might not be able to show that the death of her son arose out of and in the course of his employment would not afford a reason for bringing an ordinary suit for damages. If the parties to the contract were *in their relation* subject to this law, the plaintiff's only redress against the employer would be under it, and if she had none there because of the particular facts, she would not merely for that reason be entitled to maintain this action. Where the act is operative it is exclusive as between the employee and employer. See Georgia workmen's compensation act, sec. 12 (Ga. L., 1920, p. 167).

While we have stated that certain questions are suggested, and have referred to some of them above, according to our view of this case it actually involves two questions, and two only. First, was the decedent in the course of his employment at the time of the homicide? Second, were he and his slayer fellow servants? If both of these questions are answered in the affirmative, the plaintiff cannot recover *in this action,* irrespective of whether she might successfully prosecute a claim before the Georgia industrial commission. This is so because, except in the case of railroad companies, and aside from the compensation act, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business. Civil Code (1910), § 3129.

The decedent left his ship to go into the city on leave. If the relation of master and servant was thereby temporarily interrupted or suspended, then the decedent, as to the transaction in which he met his death, should be regarded as a stranger, and the company would be liable for such tort of the watchman while he was acting within the scope of his employment. The liability, however, would not be that of a master, but such as the defendant would owe

even to a stranger for a tort committed by his servant in the prosecution of his business. See 4 LaBatt's Master & Servant (2d ed.), 4035, 4669, 4679; *Savannah &c. Ry. Co.* v. *Flannagan,* 82 *Ga.* 579 (10) (9 S. E. 471, 14 Am. St. R. 183); *Snowball* v. *Seaboard Air-Line Ry.,* 130 *Ga.* 83, 85 (60 S. E. 189); *Seaboard Air-Line Ry.* v. *Chapman,* 4 *Ga. App.* 706, 711 (62 S. E. 488); Cox v. U. S. Coal &c. Co., 80 W. Va. 295 (92 S. E. 559, L. R. A. 1918B, 1118); Smith v. Humphreyville, 47 Texas Civ. App. 140 (7) (104 S. W. 495); Missouri &c. Ry. Co. v. Hendricks, 49 Tex. Civ. App. 314 (10) (108 S. W. 745).

We do not think, however, that the relation of master and servant was wholly suspended at the time the decedent in this case was killed, though possibly it was dormant. The defendant's grant of shore leave implied a requirement that the employee should return. Masters of vessels have seemingly a peculiar control over the members of the crew, even upon land. See Penal Code (1910), §§ 689, 690, 692, 693, 694, 695; Moore v. Manchester Liners, 79 L. J. K. B. 463, 467. The decedent had arrived at the gate provided for the entrance and exit of employees, and was virtually upon the company's premises. If his death arose in the course of his employment, and if the watchman was his fellow servant, *it is immaterial to the present consideration whether his death arose out of his employment or not.* Aliter if the question were whether a case could be made out before the industrial commission. Upon the question of the existence of the relation of master and servant between him and the company at the time and place of the decedent's death, the case seems to be controlled in principle by the decision of this court in *Dwan* v. *Great Eastern Lumber Co.,* 15 *Ga. App.* 108 (2) (82 S. E. 666), wherein it was held that where, in order to go to his home, an employee had "knocked off" work, without having completed the labors he was employed to perform or having severed his contractual relation to the master, but with the intention of returning to his work, his activities as a servant were merely dormant, and not wholly suspended, while he was being transported to his home upon a tram car operated by his employer to facilitate the performance of his work and the work of other employees. See also St. Louis &c. Railway Co. v. Welch, 72 Tex. 298 (10 S. W. 529, 2 L. R. A. 839); International &c. Railway Co. v. Ryan, 82 Tex. 565 (18 S. W. 219); East Line

&c. Railway Co. *v.* Scott, 71 Tex. 703, 710 (10 S. W. 298, 10 Am. St. R. 804) ; Ewald *v.* Railway, 70 Wis. 420 (36 N. W. 12, 591, 5 Am. St. R. 178) ; Vick *v.* N. Y. &c. R. Co., 95 N. Y. 267 (47 Am. R. 36) ; O'Brien *v.* Boston & Albany R. Co., 138 Mass. 387 (52 Am. R. 279) ; *Southern Railway Co.* v. *West,* 4 *Ga. App.* 672 (62 S. E. 141) ; *Self* v. *Adel Lumber Co.,* 5 *Ga. App.* 846 (64 S. E. 112).

Cases might be cited on both sides of the question, as to whether an employee other than a seaman, but injured under similar circumstances, should be held to have been at the time in the course of his employment. The cases we note next below are only those of seamen, and are cited in support of the proposition that the decedent was in the course of his employment, irrespective of whether the injury arose out of the employment.

In Kitchenham *v.* "Johannesburg" Steamship, 80 L. J. K. B. (N. S.) 313, Lord Justice Moulton of the English Court of Appeal said: "I consider it, therefore, to be settled that when a ship is in port and a sailor goes on shore leave, his employment is not interrupted thereby." This case was later affirmed by the House of Lords, 80 L. J. K. B. (N. S.) 1102. See, in this connection, Carter *v.* Rowe, 92 Conn. 82 (101 Atl. 491) ; Robertson *v.* Allen, 77 L. J. K. B. (N. S.) 1072, 98 L. T. 821; O'Brien *v.* Star Line, [1908] A. C. 1258; Moore *v.* Manchester Liners, 1910 A. C. 498; Craig *v.* Calabria, 7 B. W. C. C. 934; Duck *v.* North Sea Steam Trawling Co., 9 B. W. C. C. 83; Murray *v.* Allan, 6 B. W. C. C. 215; Kearson *v.* Kearson, 4 B. W. C. C. 435; 5 LaBatt's Master & Servant (2d ed.) 5425; 1 Honnold on Workmen's Compensation, 387; 1 Schneider's Workmen's Compensation Law, 562. The rulings in some of the English cases just cited may have been somewhat limited in the later cases. Davidson *v.* McRobb, 1918 A. C. 304; Webber *v.* Wansborough Paper Co., 82 L. R. K. B. (N. S.) 1058; Parker *v.* Black Rock, 83 L. J. K. B. (N. S.) 421; Nash *v.* Rangatira, 83 L. J. K. B. (N. S.) 1496; Parker *v.* Black Rock, 84 L. J. K. B. (N. S.) 1373. It was suggested in the McRobb case that the statement quoted from Justice Moulton was obiter.

As already intimated, whether any employee in the situation of this decedent at the moment of his death was in the course of his employment will depend largely upon the view of the particular court, the decisions being far from harmonious. Whether the

present case falls within the range of these later English cases or not, we are constrained to hold, under our own decision in *Dwan* v. *Great Eastern Lumber Co.,* supra, and the above-cited code sections in reference to seamen, and in consideration, too, of the other authorities cited, that the decedent was in the course of his employment as he attempted to pass through the gate, and thus, by a prescribed route, to enter upon the defendant's premises and return to the ship, after the absence on leave. He was not a stranger, but occupied the relation of a servant.

Whatever might be held in other jurisdictions, we think it is clear that under the decisions of the courts of this State the decedent and the watchman were fellow servants within the meaning of our Civil Code, § 3129. The rule that in order for employees of a common master to be fellow servants, they must be employed in the same department of a business, known as the "departmental or conassociation doctrine," does not obtain in this State. See *Winn* v. *Fulton Bag &c. Mills,* 15 *Ga. App.* 33 (82 S. E. 586) ; *Dwan* v. *Great Eastern Lumber Co.,* supra; *Georgia Coal &c. Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228). The decedent and his slayer being fellow servants, the master was not liable for the death of the one by the other under the circumstances detailed in the petition.

If the relation of master and servant between the decedent and the defendant was suspended, the compensation law would be irrelevant, and the defendant would be liable as for the homicide of any one by its servant within the scope of his employment. If that relation was subsisting, as we think it was, then, for the reasons stated, the plaintiff cannot recover in this action, irrespective of whether she may successfully prosecute a claim before the industrial commission.

This case is distinguishable from the Cox case, supra, in which the Supreme Court of West Virginia held, and properly we think, that the relation of master and servant between the employer and the person injured was suspended at the time of the injury. The employee was not going either to or from his work, but was returning from a visit to his foreman to explain why on that day he would not work. In the Hendricks cases, supra, the appellee (or party injured) was not subject to the call of his employer, but had determined to quit the employment and was on another

pursuit, entirely his own, when injured. Again, in the case of Smith v. Humphreyville, supra, the person killed was not working in the master's service "at the time of the accident and had not been since Monday previous to the Saturday when he was killed."

Nothing we have said above is in conflict with our rulings in the *Sumrell* case, 30 *Ga. App.* 682 (118 S. E. 786), or in the *Edmondson* case, 30 *Ga. App.* 697 (119 S. E. 39).

The decedent, as he was seeking to enter the gate on his way back to the ship, was "engaged in doing something incidental" to the fulfilling of the duties of his employment, though he was not actually in the performance of such duties. There was no such abandonment of the employment in this case as might, according to the suggestion in the *Edmondson* case, prevent the successful prosecution of a claim under the compensation law. Nor are the following English cases cited in the last supplemental brief for the plaintiff in error authority for the proposition that the decedent did not sustain to the defendant the relation of employee at the time of the transaction in question: Hewitt v. "Dutchess" Steamship, 79 L. J. K. B. (N. S.) 867, 102 L. T. 204, 54 S. J. 325, 26 T. L. R. 204; McDonald v. "Banana" Steamship, 2 K. B. 926 [1908], 78 L. J. K. B. (N. S.) 463; Moore v. Manchester Liners, 78 L. J. K. B. (N. S.) 26, 1 K. B. [1909] 417.

We conclude that the case falls under section 3129 of the Civil Code, providing that, "except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business," and that the court did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*