## 51263. SHUMAN v. MASHBURN et al.

CLARK, Judge.

This is an appeal by defendant landowner from a denial of his motion for summary judgment in a suit alleging negligence in maintenance upon his premises of an above-ground plastic swimming pool. Appellees are husband and wife to whom we will refer in the singular as "plaintiff" because the action is based upon injuries received by the husband when he dove from an adjacent roof into the pool.

Our recital of facts is condensed from the plaintiff's brief:

On August 31, 1974, a hot sunny day, plaintiff, a twenty-year-old male, visited defendant's home to collect for carpet-laying work he had previously done. While there he and his accompanying companion volunteered to do some roofing work upon defendant's back porch. Plaintiff changed into a pair of shorts borrowed from defendant, telling defendant "that he might dive off the porch roof into the pool." The edge of the roof was approximately one foot from the edge of a circular above-ground swimming pool in defendant's back yard. The porch roof was approximately 8 to 10 feet from the ground and approximately 4 to 5 feet from the top of the swimming pool sides.

Plaintiff, an expert diver, had seen the pool during previous visits but had never used it. He knew that the sides of the pool were approximately 5 feet high and that the water level in the pool could not be seen through the sides of the pool. After the incident he learned that the water level on that day was approximately one and one-half to two feet below the top of the pool. He did not look at the water level before commencement of work. ". . . When they looked at the pool after they [plaintiff and companion] were on the porch roof and before they had any alcoholic drinks, and again after appellee Joe M. Mashburn, Jr., was intoxicated, the pool looked to [them] like it was full of water. . . The inside of the pool was blue in color, and the sunshine and blue color on the inside of the swimming pool made the pool look to [plaintiff] like it was full of water when in fact it was not."

Defendant provided rum drinks to plaintiff and his companion while they were at work. Although defendant disputes plaintiff's version as to the number of drinks and denies the defendant's knowledge of plaintiff's inebriation, we accept plaintiff's statements, as is required of the court in a summary judgment action. Plaintiff's affidavit avers: "After I had approximately three or four of these rum drinks, Mark [defendant] and I had a conversation and I told him that I was intoxicated and Mark said to me that he agreed and could see that I was intoxicated, and after this conversation with Mark, Mark brought me a couple more rum drinks, which I drank, and these rum drinks made me even more intoxicated." (R. 61).

The concluding paragraph of plaintiff's affidavit reads: ". . . when I finished my roofing work I said in a loud voice that could be heard by Mark [defendant], who was under the porch roof at the time, that I was going to dive into the pool, and then approximately one minute or so later I dived into the swimming pool and was injured."

In seeking a reversal of the trial court's denial of his motion for summary judgment defendant-appellant submits the issues in the form of three questions. We use counsel's language in each division for our discussion.

1. *Whether there is a duty under Georgia law imposed upon a defendant pool owner to warn of a condition which is or should be obvious?* As the involved instrumentality was a swimming pool, we note the case of *Herring v. Hauck,* 118 Ga. App. 623 (165 SE2d 198). Plaintiff there was injured when he took a dive from a roof of an adjacent structure into a plastic pool with metal sides which was approximately 12 to 15 feet in diameter and designed to hold water to a depth of approximately 3 feet. This court affirmed the trial court's grant of a summary judgment for defendant with the headnote stating "that defendant was guilty of no negligence."

One of the allegations of negligence is the failure of defendant to warn plaintiff "of the shallowness of said swimming pool." (R. 5). Despite the absence of a master-servant relationship, the situation here is analogous to those cases where an employee sought to recover in common law negligence from a master on the

basis of failure of the master to give the servant notice or warning of a danger incident to his employment. The courts have ruled that it must appear that the master knew or ought to have known of the danger and that the servant did not know and had no equal means with his master of knowing such fact and by the exercise of ordinary care could not have known of the hazards. If the danger is obvious and is as easily known to the servant as to the master the latter will not be liable for failing to warn plaintiff. See *Dekle v. Todd,* 132 Ga. App. 156 (207 SE2d 654) and citations therein.

This rule as to obvious danger applies also to invitees vis-a-vis landowners. *Rogers v. Atlanta Enterprises, Inc.,* 89 Ga. App. 903 (81 SE2d 721); *Auerbach v. Padgett,* 122 Ga. App. 79 (176 SE2d 193).

Plaintiff's failure to exercise the duty of ordinary care for his own safety is similar to that which resulted in this court sustaining a summary judgment for defendant in *Simmons v. Classic City Beverages, Inc.,* 136 Ga. App. 150. There, in sustaining the grant of a summary judgment to defendant this court commented that "The plaintiff went into the situation with his eyes wide open. He saw the whole picture; he had the opportunity to measure the risks, if any . . ."

Plaintiff's contention of "optical illusion" does not excuse him from his negligent conduct. Since he was aware of the pool having a total height of five feet, the language of this court in the recent case of *Lane v. Maxwell Bros. & Asbill, Inc.,* 136 Ga. App. 712, is apropos: "Being aware of the elevation, any deception or optical illusion which may have contributed to her injury was negated. *Rich's, Inc. v. Waters,* 129 Ga. App. 305, supra; *Korn v. Tamiami Trail Tours, Inc.,* 108 Ga. App. 510 (133 SE2d 616). Appellant [plaintiff] was under a duty to use her [his] sight to discover any defects or dangers. *Herschel McDaniel Funeral Home v. Hines,* 124 Ga. App. 47 (183 SE2d 7)."

2. *Whether a person who becomes voluntarily intoxicated is relieved of the duty placed upon him by the law of Georgia to exercise reasonable care for his own safety?*

"In viewing the conduct of an intoxicated person, for

the purpose of determining his negligence or contributory negligence, the state of mind produced by the intoxication may be disregarded; for he will be judged as if the conduct occurred while he was in possession of his normal mental capacity." *Seaboard Air-Line R. v. Chapman,* 4 Ga. App. 706 (1) (62 SE 488). See page 710 of this opinion where the eminent Judge Powell succinctly stated, "He must judge and act with the same skill and caution as if he were a sober person." This is generally accepted law, as is pointed out by Dean Prosser in his hornbook entitled "Law of Torts" (4th Ed.) p. 154: "The proper statement would seem to be that one who intentionally (or negligently) becomes intoxicated is held thereafter to the same standard of conduct as if he were sober."

The standard is not altered by the complaint's allegation of negligence being "the supply of mixed alcoholic drinks by the defendant to the plaintiff." (R. 5). See *Henry Grady Hotel Co. v. Sturgis,* 70 Ga. App. 379 (28 SE2d 329).

Accordingly, plaintiff cannot avoid his duty to exercise ordinary care for his own safety with the excuse that defendant supplied him with alcoholic libations which he voluntarily imbibed.

3. *Whether the last clear chance doctrine as it exists in Georgia is applicable to the instant case so as to allow a plaintiff, who otherwise could not recover, to recover against the defendant in this cause?*

Plaintiff contends that the last clear chance doctrine is applicable on the basis that defendant heard him state his intention to dive into the pool and thereupon had a duty to prevent him from doing so during the minute that intervened between his statement and his unfortunate act.

As defendant's counsel has stated the legal propositions showing the contrary to be the correct answer, we adopt these views from his brief without using quotation marks:

The courts in Georgia have stated the doctrine of last clear chance as follows:

"[I]t is only after one [the defendant] finds another [the plaintiff] who has negligently placed himself in a position of peril, and because of his [the plaintiff's]

helplessness is unable to extricate himself from his position of peril, that the duty arises to use ordinary care to avoid injuring him [the plaintiff]," that the last clear chance or humanitarian doctrine becomes applicable. *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 670 (88 SE2d 6), conformed to 92 Ga. App. 288 (88 SE2d 424) (1955).

The principle has been found by the court to be incorporated into Code Ann. § 105-603 (See *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159 (91 SE2d 135) (1956)) which reads:

"If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases, the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

It is clear that the plaintiff must show, as a matter of law each of the elements of the doctrine of last clear chance in order to have it apply. The first essential element is that the plaintiff, by his own negligence, must have put himself in a position of peril from which he could not extricate himself (but the defendant presumably could have extricated him). The plaintiff, by his own affidavit, (paragraph 12) has defeated his effort to establish even this first essential element. The plaintiff states, in sum, that he announced his intention to dive from the roof into the pool, indicating thereby first that he had enough sobriety to intend to dive and to announce his intention, and second, that he appreciated what it was that he desired to do. At this point in time, the plaintiff had not placed himself in a position of peril from which he was helpless to recover, for he himself had final and complete control over whether he would or would not dive. In a similar situation, the Georgia Court of Appeals held that:

"A person who voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having assumed such dangerous position he is injured, cannot recover against another who is also negligent." *Taylor v. Morgan,* 54 Ga. App. 426 (188 SE 44).

In this cause, the plaintiff placed himself in a

position of peril only when he actually dived from the roof, not when he announced his intention to do so, and from that position, no person in the known world could have extricated him, no matter how great an effort such person might make. In this regard, see also 65A CJS 138, Negligence, § 137 (3), which states that: "In order for the last clear chance doctrine to be applicable, the injured person must have been in a position of actual and imminent peril from which he could not by the exercise of reasonable care, extricate himself."

In the instant case, the plaintiff was in no such position of actual peril while he stood on the porch roof.

The second essential element of the doctrine of last clear chance is that the defendant must have knowledge and appreciation of the injured person's peril in time to avoid the injury. See *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 670, supra. Because the plaintiff, Mashburn, was only in a position of peril after he intentionally dived (and with enough sobriety to know that that was what he wanted to do, according to his own statement), it becomes obvious as a matter of law that the defendant, even if he knew of the peril, could not have prevented the injury. In the *Southland* case, supra, the Supreme Court also clearly pointed out that: "The rule is so well established in this State that the acts or conduct of one voluntarily drunk will be measured by the same rules as those applying to a sober person. . ." [page 667] and that "One who knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, cannot hold another liable for damages resulting from a hurt thus occasioned, although the same may be in part attributable to the latter's negligence."

In addition, the case of *Lovett v. Sandersville R. Co.,* 72 Ga. App. 692 (34 SE2d 664) is authority for the proposition that the last clear chance doctrine is not applicable in cases where the injured person's negligence continued up to the moment of the accident and concurred with that of the defendant (if any). This rule, stated somewhat differently, is that the doctrine of last clear chance is applicable only where the defendant's failure to

avoid the consequences (which in the instant case the defendant could not possibly have avoided) was the last negligent act, and hence the proximate cause of the injury, or conversely, that the doctrine is not applicable if the plaintiff's own act was the final negligence before the accident.

4. Appellees' able advocate appropriately argues those general principles which make it difficult for defendants to obtain summary judgments. This is particularly true in negligence cases. Nevertheless, courts recognize that this modern procedural device created to eliminate jury trials applies where there is no genuine issue of fact and where defendant is entitled to judgment as a matter of law under fundamental principles of negligence law. In addition to the cases mentioned earlier in this opinion where summary judgments were granted defendants in negligence cases, we cite the following as examples: (a) no duty to warn as to patent dangers: *Laite v. Baxter,* 126 Ga. App. 743 (191 SE2d 531) (cert. den.); (b) plaintiff's negligence sole proximate cause: *Benson v. Action Elec. Co.,* 131 Ga. App. 623 (206 SE2d 647); (c) assumption of obvious risk: *Taff v. Harris,* 118 Ga. App. 611 (164 SE2d 881); (d) minor differences in floor levels: *Lamberson v. Norris,* 135 Ga. App. 647 (218 SE2d 658) and cits.; (e) railroad crossing collision: *Parson v. Central of Ga. R. Co.,* 129 Ga. App. 218 (199 SE2d 396); (f) slip-and-fall cases: *Mitchell Motors, Inc. v. Tatum,* 120 Ga. App. 689 (172 SE2d 187), *Family Dollar Stores, Inc. v. Brown,* 123 Ga. App. 359 (181 SE2d 100) and *Smith v. Shuman,* 135 Ga. App. 394 (217 SE2d 464); (g) instrumentality not dangerous: *Higginbotham v. Winborn,* 135 Ga. App. 753 (218 SE2d 917); and (h) foreseeability: *Ga. Power Co. v. Carden,* 128 Ga. App. 347 (196 SE2d 477).

In affirming our court in this last case the Supreme Court said in *Carden v. Ga. Power Co.,* 231 Ga. 456 (202 SE2d 55) that "In a negligence case, presented on motion for summary judgment by a defendant charged with negligence, the trial judge must determine: (1) the defendant's duty to the plaintiff and the risks that fall within the scope of that duty, and (2) the sufficiency of the evidence to raise an issue of fact." Applying that directive

to the case at bar, we conclude the trial court erred in denying defendant's motion for summary judgment.

*Judgment reversed. Quillian, J., concurs. Pannell, P. J., concurs in the judgment only.*

ARGUED OCTOBER 8, 1975 — DECIDED
JANUARY 7, 1976.

*Neely, Freeman & Hawkins, Edward H. Johnson, Edgar A. Neely, Jr.,* for appellant.
*Rice & Hardy, Max B. Hardy,* for appellees.