64966. WREN v. HARRISON.
64993. WREN v. HARRISON et al.

SOGNIER, Judge.

These companion cases are a wrongful death action and accompanying suit for pain and suffering brought by the appellee/parents of a three-year-old drowning victim. Defendant/appellant's motion for summary judgment was denied and immediate review was granted pursuant to OCGA § 5-6-35 (former Code Ann. § 6-701.1).

Mr. and Mrs. Harrison and their three children were invited to a Fourth of July picnic at the home of Mrs. Harrison's uncle, appellant J. O. Wren. Mr. Wren's home was located on the shore of a lake known as Buchanan City Park Lake, or Lake Olympia, in Haralson County, Georgia, where he also had constructed and maintained a boat dock. These facilities were frequently utilized for recreational activities by Mr. Wren, his family and guests, including appellees. The dock was constructed without handrails or gangplanks for boarding boats moored thereto. The complaints alleged that a large cabinet in the center of the dock created an obstruction which prevented adequate supervision of children as they played on or around it; that an inadequate number of life preservers was provided and those available were not easily accessible; and that Mr. Wren knew or should have known that these conditions presented an unreasonable risk of harm to the victim, constituting "wilful and wanton negligence toward the deceased and said conduct proximately caused his death." Wren denied all allegations that the enumerated conditions created an unreasonable risk of harm, and asserted that the complaints failed to state a claim against him upon which relief could be granted. After discovery proceedings, Wren amended his answer to assert that the negligence of the parents themselves was the proximate cause of the child's death, and moved for summary judgment.

The evidence disclosed that after lunch Mr. and Mrs. Harrison left Mr. Wren in the house and took their children to the boat dock to play and swim with their young cousins. Only the oldest child, who could swim, was permitted in the water; the other children, including Dan, the deceased, played on the dock and in the boats tied there. Only one of these children wore a life preserver. When Mr. Harrison returned to the house to get Mrs. Harrison a soft drink, Dan asked to

join his father and Mrs. Harrison helped him get out of the boat he was playing in. She watched Dan run about 100 feet towards the house, which was about 150 feet away, then sat back down in a lounge chair facing the water with her back to the house, watching the oldest child swim. Upon Mr. Harrison's return to the dock without Dan, a search ensued and the child's body was discovered floating between a boat and the dock. Mr. Harrison never saw Dan at the house and no one saw him alive after Mrs. Harrison watched him run to within 50 feet of the house. Even though Dan could not swim and had never taken swimming lessons, he was not wearing a life preserver while playing on and around the dock. No one knew how Dan drowned. Mrs. Harrison thought she could have heard Dan if he had come back on the dock, although the cabinet obstructed her view while she was seated.

We note initially that the attractive nuisance theory of recovery does not apply to natural ponds or water hazards, which distinguishes this case from those involving unfenced swimming pools located in areas where uninvited children are known to play. See *Gregory v. Johnson,* 249 Ga. 151 (289 SE2d 232) (1982) and cases cited therein. Moreover, it is clear from the evidence that the Harrisons and their children were social guests of Mr. Wren on the day in question. " 'If plaintiff is a social guest in defendant's home, the great weight of Anglo-American authority classifies him as a bare licensee, even though he was expressly invited. [Cit.] . . . [T]here is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family.' [Cit.] . . . A licensee cannot recover by showing that the defendant was merely negligent, but must show that the defendant wilfully and wantonly injured [him]." *Laurens v. Rush,* 116 Ga. App. 65, 66-67 (156 SE2d 482) (1967); OCGA § 51-3-2 (former Code Ann. § 105-402). See also *Frankel v. Antman,* 157 Ga. App. 26 (276 SE2d 87) (1981).

"[I]t is usually wilful or wanton not to exercise ordinary care to prevent injuring a licensee who is actually known to be, or reasonably is expected to be, within range *of a dangerous act being done.* [Cit.] A greater quantum of care, though not a greater degree of care, may be necessary where a child of tender years is involved and a dangerous thing exists on the premises. [Cits.] 'An owner owes to a licensee no duty as to the condition of the premises . . . save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm.' [Cit.] This is the obligation not to lay for him or permit to exist

pitfalls or mantraps in which it may be reasonably anticipated he will become ensnared. [Cit.]" *Higginbotham v. Winborn,* 135 Ga. App. 753, 756 (218 SE2d 917) (1975). " 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if . . . he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved . . .' [Cit.]" *London Iron &c. Co. v. Abney,* 245 Ga. 759, 761 (2) (267 SE2d 214) (1980). This rule, of course, presupposes that the licensees do not know or have reason to know of the risks involved. See *Strickland v. ITT Rayonier,* 162 Ga. App. 317 (2) (291 SE2d 396) (1982); *Shuman v. Mashburn,* 137 Ga. App. 231 (1) (223 SE2d 268) (1976); *Herring v. Hauck,* 118 Ga. App. 623 (165 SE2d 198) (1968).

Appellees admitted that they had visited Mr. Wren's house and used the dock on many occasions, knew that the dock had no handrails and that from some positions the cabinet partially obstructed the view of the house and boats. Nevertheless, they insist (for the first time on this appeal) that these circumstances constituted a mantrap as to a young child, "and the owner's duty to apprise and alert him . . . thereafter attached." We cannot agree. " 'The child's status as to trespasser, licensee or invitee is not determined by his age or his capacity . . .' [Cit.], and '(t)he mere fact that such child is an infant of tender years and unable to appreciate the danger of a particular situation as . . . would an adult does not alter the relation of the parties nor render the owner . . . liable to him where he otherwise would not be liable (Cits.)' [Cit.]" *George R. Lane & Assoc. v. Thomasson,* 156 Ga. App. 313, 315 (274 SE2d 708) (1980). Dan was on the dock under the supervision of his parents at the time he drowned, and they were familiar with its construction and their son's limitations. Since the duty of providing a safe playground for a child rests upon his parents, any breach of that duty must be imputed to Mr. and Mrs. Harrison, rather than Mr. Wren. *George R. Lane,* supra, and cases cited therein.

"While this court is sympathetic to the great loss suffered by the bereaved parents, under the facts of this case appellees have failed to establish any duty owed which would provide a basis for actionable negligence. [Cits.]" *Poston v. Vanderlee,* 144 Ga. App. 833 (242 SE2d 727) (1978). Accord, *Strickland v. ITT Rayonier,* supra; *Shuman v. Mashburn,* supra. Therefore, the allegations of the complaint that appellant was negligent were not sufficient to withstand his motion for summary judgment. *Truelove v. Wilson,* 159 Ga. App. 906 (4) (285 SE2d 556) (1981). Once the defendant-movant for summary judgment pierces the allegations of the complaint and "shows the court that one essential element, under any theory, is lacking and incapable of proof, [he] is entitled to summary judgment as a matter

of law, irrespective of any issues of fact with regard to other essential elements. [Cits.]" *Holiday Inns, Inc. v. Newton,* 157 Ga. App. 436 (278 SE2d 85) (1981). Accordingly, it was error to deny appellant's motion for summary judgment.

*Judgment reversed. Shulman, C. J., Banke, Birdsong and Carley, JJ., concur. Deen, P.J., Quillian, P.J., McMurray, P.J., and Pope, J., dissent.*

DECIDED MARCH 10, 1983 —
REHEARING DENIED MARCH 21, 1983 — 

*Robert P. Bleiberg,* for appellant.
*Michael L. Murphy,* for appellees.

DEEN, Presiding Judge, dissenting.

While the majority may correctly survey the historical duty of care imposed upon a landowner as to a licensee, I believe it ignores the recent trend of the law to date culminating in *Gregory v. Johnson,* 249 Ga. 151 (289 SE2d 232) (1982) overruling *Gregory v. Johnson,* 159 Ga. App. 320 (283 SE2d 357) (1981). My personal observations in the special concurrence therein did not prevail. The Supreme Court in *Gregory* followed Section 339 of the Restatement (Second) of Torts and imposed a duty on the landowner to exercise reasonable care to prevent foreseeable injury to trespassing children. Questions of any breach of that duty and any contributory negligence of the parents were designated for jury resolution. The anomalous effect of the majority's decision here is to impose a lesser duty of care as to a social guest/licensee than the duty owed to a mere trespasser.

"While section 339 is phrased in terms of trespassing children, it is not limited to them. The same principles apply if the child is a licensee or invitee. It would be *irrational to impose a higher duty on landowners when the child is a trespasser than when he is a licensee or invitee.* Section 343B of the Restatement states that, '(i)n any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee.' While there may be a greater duty owed to licensees or invitees than to trespassers, this section makes it clear that they are entitled to *at least* as much protection as trespassers." 34 Mer. L. Rev. 433, 446 (1982). (Emphasis supplied.)

The fact that the doctrine of attractive nuisance was at play in *Gregory* does not render the case inapposite here; its import is its pronounced consideration of foreseeability and traditional

negligence concepts in analyzing a landowner's duty of care. I note further that both the Supreme Court and this court actually have previously applied such considerations in determining the duty of care to licensees. " 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize . . . the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.' " *Patterson v. Thomas,* 118 Ga. App. 326, 328 (163 SE2d 331) (1968). The Supreme Court expressly adopted this view in *London Iron & Metal Co. v. Abney,* 245 Ga. 759 (267 SE2d 214) (1980).

I believe that factual questions existed for jury resolution, regarding the elements of knowledge of the condition and any foreseeable risks created by the condition (as well as any contributory negligence of the parents), and that the trial court properly denied the appellant's motion for summary judgment. I respectfully dissent.

I am authorized to state that Presiding Judge Quillian, Presiding Judge McMurray and Judge Pope join in this dissent.